UNITED STATES *v.* BELVIN *et al.*, (three cases.) SAME *v.* PATTESON *et al.*, (two cases.) SAME *v.* GUIGON *et al.* SAME *v.* STEPHENS *et al.*

*(Circuit Court, E. D. Virginia. April 22, 1891.)*

**1. ELECTIONS—HINDERING VOTERS AT FEDERAL ELECTION.**
    Rev. St. U. S. § 5506, making it unlawful to hinder a citizen from voting, though unconstitutional in so far as it attempts to regulate state or municipal elections, is valid as a regulation of congressional elections. Following *U. S.* v. *Munford,* 16 Fed. Rep. 223. Distinguishing *U. S.* v. *Reese,* 92 U. S. 214.

**2. SAME—INDICTMENT.**
    Hindering voters at an election is a misdemeanor only, and charges for hindering, and for conspiring to hinder, at the same time and place, may be joined in the same indictment.

**3. SAME.**
    An indictment under Rev. St. U. S. § 5506, making it unlawful to hinder, or to conspire to hinder, a citizen from voting at an election, which merely charges that

defendant did hinder a certain person from voting, without setting forth the acts
and method of the hindering, is too vague and general, and should be quashed.

4. SAME.
  Such defect is not cured by adding, as the method by which the voters were hin-
  dered, that defendant unlawfully challenged them, or that he consumed the time
  for conducting the election by frivolous interrogations, or by unlawfully creating
  disorder by pushing and saying disorderly and illegal things to the voters, since
  such acts are in themselves too general, and are not in themselves contrary to the
  laws of the United States. Following *U. S.* v. *Cruikshank*, 92 U. S. 542.

5. GRAND JURY—QUALIFICATION.
  An officer who has issued a warrant of arrest for accused, and expressed an opin-
  ion as to his guilt, is not thereby disqualified to serve as a grand juror, and assist in
  finding an indictment against him.

6. SAME—LEGALITY—REMOVAL OF FOREMAN.
  The fact that the foreman of a grand jury is relieved from serving, and another
  appointed in his place, does not invalidate the jury.

At Law. Violation of election law.

*Thos. R. Borland*, U. S. Atty., and *L. C. Bristow*, Asst. U. S. Atty.
*Meade Haskins* and *James Lyons*, for defendants.

HUGHES, J. These seven indictments stand upon a motion to quash,
and after full argument I am to pass upon that motion. It is conceded
that all of the indictments are based upon section 5506 of the Revised
Statutes of the United States, which provides for the punishment of ev-
ery person who, by any unlawful means, hinders, delays, prevents, or
obstructs, or combines and confederates with others to hinder, delay,
prevent, or obstruct, any citizen from voting at any election in any state,
territory, county, city, or parish. Five of these indictments charge that
the persons against whom they are brought did hinder, delay, prevent,
and obstruct sundry persons, whom they name, from voting at the elec-
tion held in the first precinct of Jackson ward, in the city of Richmond,
on the 6th day of November, 1888, for the election of a member of the
fifty-first congress of the United States; and also charge that the persons
indicted did unlawfully combine and confederate with each other to hin-
der, delay, prevent, and obstruct sundry citizens from voting at the said
election. Two of the indictments contain only the latter charge. The
motion to quash is made on grounds which have no reference to the form
and structure of the indictments; and also on grounds apparent on the
face of those instruments. I will deal with the first class of objections
before considering the second.

The principal objection of the first class is that section 5506 of the Re-
vised Statutes was a law which congress had no authority to pass; and
therefore that acts committed in violation of it are not within the cog-
nizance of this court. It is argued that in the case of *U. S.* v. *Reese*, 92
U. S. 214, the supreme court, Chief Justice WAITE delivering the opin-
ion, pronounced the fourth section of the enforcement act of May 31,
1870, (which is identical with section 5506 of the Revised Statutes,) un-
constitutional; and that if one be unconstitutional the other is so by nec-
essary consequence. This court has already considered this objection.
We treated it so fully in the case of *U. S.* v. *Munford*, 16 Fed. Rep. 223,
the circuit and district judges both delivering opinions, that I now need

only refer to what was said in that case.    Chief Justice WAITE was then a member of this court, though not present; and it is hardly to be supposed that the opinions rendered by the two other judges, who may be presumed to have known his views, were in conflict with anything which the chief justice had said in the *Case of Reese.*

The offense for which Reese was tried was committed in the progress of a municipal election, over which the federal court that tried him could have had no jurisdiction, unless given by some constitutional act of congress.    No constitutional statute could be passed by congress relating to state and municipal elections, except for the express purpose of protecting voters from being hindered or prevented from voting on account of their race, color, or former slavery.    The act of May, 1870, contained no such limitation, and was therefore held to be inapplicable to a municipal election.    But it is a plain *non sequitur* to contend that, because an act of congress has no constitutional warrant in relation to a state election, therefore it has no such warrant when applied to a congressional election.    The argument on this subject is fully elaborated in the case of *U. S.* v. *Munford,* and need not be repeated here.    In the case of *U. S.* v. *Cruikshank,* 92 U. S. 542, another section of the enforcement act of 1870 was brought in review, which was pronounced unconstitutional on grounds analogous to those alleged in *Reese's Case.*    The cases of *U. S.* v. *Harris,* 106 U. S. 629, 1 Sup. Ct. Rep. 601, and of *Baldwin* v. *Franks,* 120 U. S. 678, 7 Sup. Ct. Rep. 656, 763, cited by the defense in the cases at bar, turned upon the constitutionality of the second section of the act of congress of 20th of April, 1871, nearly identical with which is section 5519 of the United States Revised Statutes.    That section is egregiously and palpably unconstitutional on its face.    But neither in its origin nor its history has it any relation to or analogy with section 5506 of the Revised Statutes, under which the indictments at bar are brought.    It cannot be reasonably contended that because it was beyond the competency of congress to pass one law, it was therefore beyond its power to pass another law unlike the first in purport and purpose.    The decisions in the cases of *Harris* and of *Baldwin* v. *Franks* do not, therefore, rule those we now have under consideration.

Another ground on which the motion to quash these indictments is based is thus stated by counsel, (I have somewhat abbreviated the last clause:)

"That W. H. Taylor, the foreman of the said grand jury, as originally constituted, was the prosecuting witness in the case against them, and the United States commissioner who issued the warrants of arrest for the said defendants, and that the said W. H. Taylor had formed and expressed an opinion as to the guilt or innocence of the said defendants, and was thereby disqualified to act as a grand juror in this case; moreover, because the said W. H. Taylor was irregularly removed from the grand jury after the said grand jury had been impaneled and sworn, and he had been appointed foreman thereof, and because afterwards a new foreman was appointed,"—

—all of which proceedings vitiated the grand jury.

Some of the allegations in this statement may or may not be true. There is no proof of them before the court. What actually transpired in open court was as follows, so far as I can recall the circumstances after a lapse of 12 months: The grand jury were duly impaneled on the 8th April, 1890. They retired and were in session for a time on that day, but brought in no indictments. On the next morning, after their names had been called, Taylor, the foreman, said to the court something to the effect of his having acted as commissioner of the United States circuit court in the cases of several persons charged with violations of the election laws at the recent election, and that he had become aware that these violations were to be made the subject of investigation before this grand jury. He therefore asked, because of his previous connection with these election cases, to be excused from further service on the jury. Taylor was excused and discharged, and another member of the grand jury was sworn as foreman, and the jury were sent to their room and proceeded with their deliberations. This was on the 9th April, on which day indictment No. 710 was brought in. On the next day indictment No. 711 was found; on the 23d April Nos. 713 and 714 were found; on the 24th April No. 715, and on the 25th April Nos. 716 and 717, were found.

I do not see in these occurrences anything to affect the validity of the grand jury which found these indictments, or of its proceedings. The function of the grand jury is not to try persons accused of crimes, but merely to examine whether and what crimes have been committed, to designate the persons at whom the evidence points as criminal, and, by indictment, to charge such persons before the court and country as answerable for the crimes which have been committed. Originally grand jurors were chosen for the purpose of giving testimony to their fellow-jurors as to crimes committed within the county. If a grand juror sees one man murder another he may testify to that fact to the jury of which he is a part, without thereby disqualifying himself to act as a grand juror. Grand jurors are not sworn on their *voir dire* to say whether they have formed or expressed an opinion of the guilt or innocence of a person charged with crime. On the contrary, the court charges each of them to bring to the attention of the grand jury all offenses of which he may have any personal knowledge. The grand jury does not try; it merely accuses with a view to trial. The pettit jury tries; no other body does or can try the graver offenses. Nor is an examining magistrate or commissioner disqualified to act as a grand juror upon cases sent on by himself. His examination is not a trial. He has no right to form an opinion of the guilt or innocence of an accused person brought before him for preliminary examination. The weight of evidence determines whether the accused shall be sent on. In sending the accused on the law presumes him innocent, and requires the committing magistrate to presume him innocent until convicted by the pettit jury before whom he is afterwards to be tried upon his deliverance. But, while all this is true in strict law, yet, in the interest of impartial justice, it is better that

grand jurors should have had as little to do with an offense as is practicable, if it is to come before their body for examination. It was in the interest of impartial justice, and not because, in strict law, Taylor was not as competent to act on the grand jury of which he was foreman as any other member of it, that he was excused from further service by the court. That a court may, in its discretion, excuse the foreman or any member of a grand jury from further service, without invalidating the jury, is too obvious to need demonstration. The law provides that 23 may be sworn, and it also provides that 16 may act as a quorum. It contemplates the contingency that as many as 7 may be absent, either from death, sickness, or other cause, without invalidating the jury. Moreover, if by any chance the number should be reduced below 16, the law provides a method for filling up the vacancies that have happened. I think the grand jury of this court convened on the 8th of April, 1890, was a valid legal body, competent to act after the retirement of its first foreman, and that the indictments which they found are free from objection on any ground relating to the validity of the grand jury.

We come now to consider the objection that the indictments "are irregular and void on their face." First, it is contended that the charge set out in them that defendants hindered, delayed, prevented, and obstructed voters from voting cannot be joined in the same indictment as it is in five of these indictments, with the charge that they combined and confederated with each other to hinder, delay, prevent, and obstruct. It is true that a charge of conspiracy to commit murder and a charge of murder cannot be joined in the same indictment, and the rule holds also as to felonies. But this is because murder and the felonies constitute such grave charges against an accused person that the law, in its humanity, will not require him to defend himself against any other charge when he is upon his defense for one of these. But the rule does not hold in regard to certain classes of misdemeanors. All violations of laws of congress are misdemeanors, unless expressly declared to be felonies by the respective laws creating them.

The offenses charged in the indictments at bar are misdemeanors, and a charge of conspiring to commit them may be joined with a charge of committing, when they are made as they are in these indictments. It must be observed that these instruments do not charge that A. committed the offense at Richmond, B. at Petersburg, C. at Norfolk, D. at Hampton, E. at Williamsburg, and F. at Alexandria; and that A., B., C., D., E., and F. combined and confederated with each other to commit these several offenses. But the indictments charge that A., B., C., D., E., and F. combined and confederated with each other to hinder, delay, and prevent certain citizens from voting on the 6th November at Jackson ward, in Richmond, in a congressional election, and that those same persons did then and there hinder, delay, and prevent the said citizens from voting at that place in the said election. A joinder of charges in this manner, of conspiring to commit, and of committing, a misdemeanor,

v.46F.no.5—25

by the same persons, at the same place, puts no hardship upon the accused, who can defend themselves from one of the charges without any reasonable embarrassment from having at the same time to defend themselves from the other. Such a joinder of charges may be permitted for the sake of convenience, without violence to the policy or to the humanity of the law. And therefore I am of opinion that the five indictments containing this joinder of charges are not assailable on account of that fact.

Coming last to the principal objection urged against these indictments, it is complained that the charges they make are in vague, general terms, without such special averments as are required by the rules of criminal pleading; as are necessary to put the defendants on notice of what they are to meet by evidence; and as identify the offenses charged with such precision that, upon acquittal or conviction, the accused may not be brought to future trial for the same offenses in other prosecutions. Two of the indictments charge, in the general language of section 5506, that at the election which has been described the accused did unlawfully combine and confederate with each other to hinder, delay, prevent, and obstruct certain persons named from voting at the said election, adding nothing to show by what acts and methods the hindering and obstructing was done; nothing to show the court that the acts were within the purview of the statute; nothing to give the accused notice of the proofs that he was called upon to meet; nothing to so identify the offense that it could not be made the subject of a future prosecution. I think the ruling of the supreme court in the case of *U. S.* v. *Cruikshank*, 92 U. S. 542, governs the two indictments alluded to. It was there decided that in criminal cases, prosecuted under the laws of the United States, the accused has the constitutional right, under the sixth amendment, "to be informed of the nature and cause" of the accusation. The court accordingly held that the indictment must set forth the offense with certainty, and that every ingredient of which the crime is composed must be clearly alleged. It held that where the definition of an offense, whether at common law or by statute, includes generic terms, it is not sufficient that the indictment shall charge the offense in the same generic terms as in the statute, but must "descend to particulars." In its facts and leading features, *Cruikshank's Case* is on all fours with the case at bar. The verdict on trial being simply guilty or not guilty, the indictment must inform the court of the facts charged, so that it may decide whether they are sufficient to support a conviction if one should be had. This is elementary law, and in criminal jurisprudence it is of fundamental importance. There can be no doubt, therefore, that indictments Nos. 710 and 711 are defective, and must be quashed. The other five indictments under consideration contain each two counts, the second of which in each is identical in form with the single count embraced in indictments Nos. 710 and 711. These second counts in each of the five indictments are therefore governed by the ruling in *Cruikshank's Case*, and must be quashed.

There remain, therefore, for consideration only the first counts in each of the five indictments, Nos. 713, 714, 715, 716, and 717. These are nearly alike in language and structure. They charge that the accused persons hindered, delayed, and prevented certain persons named from voting at the election described, and they contain each additional clauses intended to indicate the means by which the hindering, etc., was done. But these additional clauses are themselves drawn in such general terms as fail to improve upon the main charge of hindering, delaying, preventing, and obstructing. For instance, the charge of hindering is reinforced by the specification that the accused unlawfully challenged the voters named in the indictment. Except in forts, arsenals, and places belonging to the United States, and on the high seas, no offenses can be committed against the United States except those which are declared to be offenses by express acts of congress. To challenge a voter, even to unlawfully challenge a voter, even in a federal election, is not a crime against the United States cognizable in the federal court. To hinder a voter from voting in a federal election is. Therefore, when an indictment charges too generally that the accused hindered a voter from voting, it does not and cannot cure the defect of that charge to specify that the hindering was by means of challenging voters. The specification is as general as the main charge, and only weakens it. The indictments also go on, after making a general charge of delaying voters in casting their votes, to specify that the accused did "consume the time for conducting the election by putting frivolous interrogations" to certain persons named who offered to vote. Now, to unlawfully delay a voter in voting at a federal election is a crime against the United States, but "to consume the time for conducting an election" by frivolous or other questions is not a federal crime, and it cannot help a charge of delaying a voter in voting, which is defective by reason of generality, to specify that it was effected by consuming time by frivolous questions, for one charge is as general as the other.

Again, these indictments, after charging in general terms that the accused prevented and obstructed certain voters from voting, go on to specify that the accused "did unlawfully create disorder by pushing, and doing and saying many other disorderly, improper, and illegal things to the persons offering to vote." Here, again, it is to be remarked that unlawfully creating disorder by unlawfully pushing, and doing and saying improper things to voters, is not a crime against the United States, and, even if it were, is as general as the charge of preventing and obstructing. Such an allegation gives no precision to a general charge of preventing and obstructing voters, and fails to cure its fault. The objection to these several specifications is that they are themselves too general; that they do not "descend to particulars;" that they are specifications which do not specify. It does not help the too great generality of a charge of unlawfully hindering, to specify generally that it was done by unlawful challenging; nor does it help the defect of a general charge of delaying to specify generally that the time for conducting the election was unlawfully consumed by frivolous interrogations; nor does it im-

prove a general charge of preventing and obstructing to specify generally that it was done by unlawfully pushing, etc. Two generalities do not make one speciality. My opinion and decision is that, in this respect, all the indictments are ruled by the decision of the supreme court in the case of *U. S. v. Cruikshank,* and must therefore be quashed.

The following was entered as the order of the court: This day came again the United States by their attorneys, and the defendants likewise, and the court, having maturely considered the motions of the defendants to quash these indictments, and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that the motions of the defendants to quash these indictments must be sustained. It is therefore ordered by the court that these indictments be, and the same are hereby, quashed, and that the defendants go thereof without day.