## UNITED STATES ex rel. McCANN v. THOMPSON, Warden, et al.

### No. 1428.

District Court, S. D. New York.

March 29, 1944.

Gene McCann, pro se, and John F. X. Finn, of New York City, Hallam M. Richardson, of Brooklyn, N.Y., and Thomas L. J. Corcoran, of New York City, for petitioner.

James B. M. McNally, U. S. Atty., of New York City (Richard J. Burke, of New York City of counsel), for respondents.

HULBERT, District Judge.

Petition for writ of habeas corpus is denied, writ dismissed and prisoner remanded.

Gene McCann was convicted on July 22nd, 1941, after trial to the court without a jury, upon an indictment charging use of the mails to defraud. He was authorized to defend that action, as he has been authorized to carry on all subsequent proceedings, in forma pauperis. He appealed from that judgment but, unable to procure a typewritten transcript of the record, he made up such a bill of exceptions as he was able to do. Subsequently the United States Attorney procured from the official reporter, and filed, a transcript of the record (furnishing petitioner with a copy) which was settled by the trial judge.

The petitioner has challenged the accuracy of the transcript of the record on the trial filed by the United States Attorney and the Appellate Court has vacated the order made by the trial judge which settled that record and has directed this court to resettle the same.

In the meantime petitioner sought his release by habeas corpus proceedings upon the ground that his trial by jury, without the benefit of counsel to advise him concerning his rights in waiving a trial by jury, was in violation of the Fifth Amendment to the Constitution of the United States.

A writ allowed and sustained by the Circuit Court of Appeals [1] was reversed by the United States Supreme Court.[2] Thereafter a writ allowed by a judge of this court was, after argument upon the papers, denied,[3] and the order dismissing the writ was affirmed.[4] Certiorari was granted and on the consent of the Attorney General there was a reversal by the United States Supreme Court.[5] In accordance with its directions, and after extensive hearings were had, the petition was denied [6] and from the order thereon entered a second appeal was taken and is pending undetermined.

The hearing on the writ of habeas corpus before this court covered an intermittent period from early in November, 1943, until the end of January, 1944. A typewritten transcript of the record will constitute approximately 2,000 pages. The statute, 36 Stat. 1088, as amended by Chap. 3, Public Law 222, H. R. 3611, 78th Congress, 2nd Session, 28 U.S.C.A. §§ 9a, 9b, has not become operative so as to enable the petitioner to obtain the typewritten transcript of the record at the expense of the Government; the reporter is already out of pocket for the services of the stenographer who reported the proceeding and to make a typewritten transcript would, he claims, cost him an additional $1,200 or $1,500.

1 United States ex rel. McCann v. Adams, 2 Cir., 126 F.2d 774.

2 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268, 143 A.L.R. 435.

3 Opinion Leibell, J., Apr. 20, 1943. No opinion for publication.

4 2 Cir., 136 F.2d 680.

5 320 U.S. 220, 64 S.Ct. 14.

6 Opinion Hulbert, D. J., 3 F.R.D. 396.

The petitioner contends, through his counsel, that he finds himself beset in the prosecution of his pending appeals with well-nigh insuperable obstacles. This proceeding appears to be an attempt to by-pass them.

This court has a compassionate regard for the counsel for petitioner who have been assigned by the court and have labored earnestly, in fact, assiduously for the petitioner without compensation and feels that an opportunity should be afforded for the consideration and determination of the questions here sought to be raised, as inexpensively, so far as time of counsel is concerned, and speedily, for the benefit of the petitioner.

The principle contention now raised is that the indictment returned against Gene McCann was found by less than a legal quorum and that he should therefore be discharged from custody.

This question was presented on the previous hearing. Reference should be had to the notice of motion dated March 5, 1941 (Clerk's File C-109-231) as to relief which the petitioner sought by plea in abatement and motion to quash before a plea was entered to the indictment, upon which he was thereafter tried. See paragraphs 2, 3 and 8 of the notice of motion and paragraphs 29, 30, 31, 34 and 35 of a supporting affidavit verified by the petitioner March 5, 1941.

These allegations were controverted by affidavits submitted on behalf of the Government in opposition thereto, to which the petitioner interposed a replying affidavit verified March 20, 1941. See paragraphs 3, 4, 6, 7, 9, 10, 11 and 12.

This court felt that it was not within the issue as defined by the United States Supreme Court in its opinion directing that a hearing be had, to pass upon and decide the other points raised by the petitioner, and pointed out that the remedy of the petitioner was by appeal from the order entered on the decision of the judge who denied the plea in abatement and motion to quash.

Challenges to the array or to individual grand jurors were recognized at common law and are available both to the prosecution and the accused in federal courts. If, however, as the petitioner contends, the procedure is to be governed by the law of the State of New York, the provisions of the Code of Criminal Procedure (Sections 235, 237 and 238) would not avail him of any benefit at this stage of the proceeding. See McKinney's Consolidated Laws of New York, Book 66, pages 314 and 315, and cases there cited).

Title 28 U.S.C.A. § 419, provides: "Grand jurors; number when less than required number. Every grand jury impaneled before any district court shall consist of not less than sixteen nor more than twenty-three persons. If of the persons summoned less than sixteen attend, they shall be placed on the grand jury, and the court shall order the marshal to summon, either immediately or for a day fixed, from the body of the district, and not from the bystanders, a sufficient number of persons to complete the grand jury. And whenever a challenge to a grand juror is allowed, and there are not in attendance other jurors sufficient to complete the grand jury, the court shall make a like order to the marshal to summon a sufficient number of persons for that purpose."

Title 18 U.S.C.A. § 554a provides:

"Same; objection on ground of unqualified juror barred where twelve qualified jurors concurred; record of number concurring.

"No plea to abate nor motion to quash any indictment, upon the ground that one or more unqualified persons served upon the grand jury finding such indictment, shall be sustained . if it appears that twelve or more jurors, after deducting the number so disqualified, concurred in the finding of said indictment: Provided, however, That no juror shall be permitted to testify, in this connection, as to whether he or any other individual juror voted for or against the finding of such indictment, but it shall be the duty of the foreman of each grand jury to keep a record of the number of grand jurors concurring in the finding of any indictment and to file such record with the clerk of the court at the time the indictment is returned. Such record shall not be made public except on order of the court."

Petitioner's principle contention is summarized by his counsel as follows:

(a) Less than sixteen persons (namely fifteen persons) attended to hear testimony, deliberate and vote.

(b) In addition, six of the fifteen were disqualified to serve as grand jurors, with the result that only nine qualified persons heard the testimony and voted.

(c) At least two concededly disqualified grand jurors were present throughout the taking of testimony before the grand jury, throughout its deliberations and vote, and upon the handing up of the indictment at the time of its acceptance by the court.

Ordinarily there are at least two grand juries impaneled each month in this district. The morning grand jury was sworn in on the first Tuesday of January, 1941, and Douglas Green was appointed foreman and John H. C. Templeton was elected Secretary. During its service that grand jury considered and disposed of 80 cases, of which 46 preceded the consideration of the case against the petitioner, which was first taken up on January 22nd, 1941. It is stated in the minutes that Green and Simmonds disqualified themselves and neither participated in any discussions nor voted to indict McCann, as grand jurors. Testimony was heard on January 22nd, on which occasion all 23 grand jurors were present; further testimony was taken on January 24th, on which occasion, grand jurors Forbes and Schaff were absent; further testimony was taken on January 27th, upon which occasion grand jurors Carroll, Nagle, Scott and Wylie were absent. The indictment against petitioner was voted on January 28th, and it is conceded that if grand juror Hutton were present, he did not vote.

The indictment was returned to the court on February 18th, 1941; upon which occasion all of the members of the grand jury were present with the exception of grand juror Michael. So that, excluding Green and Simmonds, there were present on January 22nd, 21 grand jurors; on January 24th there were present 19 grand jurors; on January 27th there were present 17 grand jurors; on January 28th there were present 17 grand jurors; and on February 18th there were present 20 grand jurors.

Objection was made, that although Green had disqualified himself, he signed the indictment. There is no statute which requires the foreman to do so. It is a mere custom, probably as a courtesy to the foreman, but the entire panel except one attended in open court when the indictment was handed up.

■ The argument of petitioner's counsel that the absence of Forbes and Schaff on January 24th, Carroll, Nagle, Scott and Wylie on January 27th, Schaff,

Nagle, Wylie and Hutton on January 28th, and Michael on February 18th, in addition to the disqualification of Green and Simmonds, reduced the number of qualified grand jurors to 15, and that Templeton, Stern, Rorer and Comerer were also disqualified "because of their relationship to the Better Business Bureau, which was in open hostility to Gene McCann and a defendant in his anti-trust suits" and further reduced the number of qualified jurors to nine, is without substantial merit.

What the minutes of the grand jury session does show is, that 12 members, none of whose disqualifications have been established, voted for the indictment, and, further, that a quorum was present upon every occasion when the case against the petitioner was considered.

■ It is a matter of mere speculation to say that when the grand jury was empanelled and sworn either they or the petitioner knew that a case against him would be presented to them. A challenge to the array could hardly be made except by a defendant who had been taken into custody and held pending action of a grand jury to be thereafter empanelled. For that reason the statute authorizes an indicted defendant who had no such opportunity to challenge the array to do so by plea in abatement or motion to quash before pleading to the indictment, or thereafter in the event that the trial court in the exercise of its discretion should permit him to withdraw a plea previously entered for that purpose. In this case the petitioner did conform to that very practice.

■ It was within the power of the motion judge to grant a hearing and explore all of the circumstances incident to the indictment if, upon the papers before him, he felt there was just cause so to do. In this case he did not, and in my opinion, the sole remedy of the defendant is by appeal and not by writ of habeas corpus. In re Wilson, Petitioner, 140 U.S. 575, 11 S.Ct. 870, 35 L.Ed. 513.

In United States v. Kilpatrick, D.C.W.D. N.C., 16 F. 765, the court said at page 774: "If a bill of indictment be found without evidence, or upon illegal evidence, or for any improper conduct of the jury, or for any improper influence brought to bear upon the jury, such matters may be pleaded in abatement or may be ground for quashing an indictment, but cannot be availed of by motion in arrest. All such ob-

jections must be made before a trial. State v. Horton, [63 N.C. 595]."

It is interesting to observe that the second preliminary draft of the proposed Federal Rules of Criminal Procedure, prepared by the Advisory Committee on Rules of Criminal Procedure appointed by the Supreme Court of the United States, if the same had been approved and were now effective, would not afford the petitioner any greater right than he has been able to assert under the existing law and rules of procedure. (See particularly proposed Rule 6 and notes thereon.)

The court has read and considered the lengthy opinions in United States v. Belvin, C.C., 46 F. 381, and Jackson v. United States, 9 Cir., 102 F. 473, which paraphrases Commonwealth v. Woodward, 157 Mass. 516, at page 518, 32 N.E. 939, 34 Am.St.Rep. 302. Also: Naufito v. United States, 8 Cir., 20 F.2d 376; United States v. Perlman, D.C., 247 F. 158, 160; United States v. Violon, C.C., 173 F. 501; United States v. Southmayd, Fed.Cas.No. 16,361; People v. Molineux, 27 Misc. 60, 57 N.Y.S. 936; People v. Glen, 173 N.Y. 395, 66 N.E. 112; United States v. Rubin, D.C., 214 F. 507; Breese v United States, 4 Cir., 143 F. 250; McKinney v. United States, 8 Cir., 199 F. 25, but has felt it undesirable to lengthen this opinion by quoting excerpts therefrom.