# Court of Oyer and Terminer—New York County.

## *May,* 1891.

# PEOPLE *v.* CLARK.

CRIMINAL STATUTES AFFECTING CORPORATIONS—ACT CREATING NEW OFFENCE—"CAR STOVE HEATING ACT," L. 1887, CH. 616—INDICTMENT FOR A MISDEMEANOR.

A distinction is to be drawn between statutes requiring a corporation to perform a positive act, and statutes prohibiting the doing of an act, or the employment of a certain means or appliances. Under legislation of the former character, making neglect to affirmatively comply with the law a criminal offence, the directors of a corporation thus delinquent will not be indictable either as principles or accessories. But, under statutes of the latter class, where an act is interdicted and its commission declared a crime, the officers and directors of the wrong-doing company are ordinarily liable, and liable as principals when the offence is a misdemeanor.

Where a statute has prohibited a corporation from doing an act, an agent of the corporation, who, personally, and acting for the corporation, does the prohibited act, violates the statute and is liable to indictment.

Where the intention of the legislature can be gathered from an act creating a new offence that it is intended to limit the guilt of the commission thereof to those against whom the prohibition is expressly aimed, none others than those mentioned in the act are liable. But where there is in the statute no limitation whatever as to who shall be deemed guilty of its violation, this shows that there was no intention to limit its criminal effect further than statutory construction requires that it should be limited.

Where a statute prohibits the doing of an act by a specified class of corporations and persons, and makes any violation of that act

a misdemeanor, all active participants in such violation are equally guilty, whether they be a corporation, or directors, or other agents or servants of the corporation, the directors, not because they are directors, but personally. No individual, however, is liable in such case who does not personally participate either in the doing of the act, or in the aiding and abetting thereof. Mere neglect to act does not constitute a crime except against the class upon whom the duty is imposed.

Under the provisions of chapter 616 of the Laws of 1887, known as the "Car-heating act," and amendatory acts, which provide that it shall not be lawful for any steam railroad doing business in this state to heat by any stove-cars in certain classes of trains, and that the violation of any of the provisions of the act will be deemed a misdemeanor, the officers and directors of the railroad which has violated the act cannot be held liable, merely because they are officers and directors, but they must be shown to have personally participated in the commission of the offence for which the indictment has been found, and if the evidence upon the trial does not reach this dignity, then no offence has been made out.

The fact that a misdemeanor has been committed by a foreign corporation does not relieve from liability to punishment one who has aided and abetted it in the commission of the offence. The inability to punish the offender can in no way affect the ability to punish the aider and abettor.

Although a statute declaring an act or omission to be a misdemeanor makes no mention of aiders and abettors in the doing thereof, every person who aids and abets another in such an act or omission is also guilty of misdemeanor and is guilty thereof as a principal, and may be indicted and punished as such (*Penal Code* section 682).

Section 31 of the Penal Code is but a recognition of the former rule providing that accessories may be indicted and punished as principals if the crime be misdemeanor. Therefore, but one crime is committed, whether the evidence tends to show that it was directly committed by the defendant, or that he aided and abetted in the doing of the crime, bringing the case within the provisions of section 279 of the same Code, which provides that the crime charged may be charged to have been committed in a different manner or by different means. It is the same misdemeanor, whether committed by the principal or accessory, as both are principals, guilt being dependent upon proof of a different state of facts.

An indictment for misdemeanor, which in some counts charges that the defendants did the acts which constituted the crime and in others that they counselled, aided, and abetted in the doing of the thing, is good in form.

Demurrer by defendants to an indictment for a misdemeanor consisting of the violation of the provisions of the "Car Stove Heating Act," chapter 616 of the Law of 1887, and acts amendatory thereof.

The demurrer was interposed to five counts of the indictment, of which two other counts were set aside on motion, as appears from the report of the decision thereon, at page 169, *ante.*

The grounds of the demurrer, which was interposed by all the defendants herein,—Charles P. Clark, Wilson G. Hunt, E. A. Trowbridge, William D. Bishop, Nathaniel Wheeler, Henry C. Robinson, Edward M. Reed, Joseph Park, Chauncey M. Depew, Henry S. Lee, William Rockefeller, and Leverett Brainard,—appear in the opinion of the court,—where also is given the statute (*L.* 1887, ch. 616) under which the indictment was found.

The fifth and seventh counts of the indictment which were set aside on motion are given at page 169, *ante.*

The counts to which the present demurrer was interposed were in substance as follows:

FIRST COUNT—In the first count of the indictment it is alleged and charged that the corporation, The New York, New Haven & Hartford Railroad Company, maintained, operated, and used the steam railroad in question; that the defendants were some officers, all directors of said corporation, and that as such directors they had charge, control, and supervision of the equipment, management, and operation of the said railroad and of the trains and cars by it operated and used, and of the heating of the passenger cars thereof, composing the passenger trains thereof, etc., and then it is alleged that the defendants " did unlawfully heat the passenger cars on other than mixed trains, to wit, divers passenger cars on, of, and composing divers passenger trains,

then and there run on, used, and operated by the said rail-
road, by the act, procurement, direction, sufferance, and per-
mission of them " (the said defendants) " . . . for the con-
veyance of passengers in, by, over, and along the said line of
railroad, and in, by, over, and along that portion thereof lying
within the city and county of New York aforesaid, . . . and
did cause, procure, suffer, and permit the said passenger cars
to be heated . . . by means of stoves kept inside of such
cars . . . against the form of the statute in such case made
and provided and against peace of the people of the state
of New York and their dignity."

SECOND COUNT—In the second count of the indictment
it is alleged and charged that the corporation operated,
maintained, and used the steam railroad in question, and
that of the day laid in the indictment the defendants " did
unlawfully heat the passenger cars of the said steam-railroad
on other than mixed trains . . . and did cause, procure,
suffer, and permit the said passenger cars to be heated . . .
by means of stoves kept inside of such cars . . . against
the form of the statute in such cases made and provided,
and against the peace of the people of the state of New
York."

THIRD COUNT—In the third count of the indictment it
is alleged and charged that the corporation used, operated,
and maintained the railroad in question ; that it did unlaw-
fully heat the passenger cars of the said steam-railroad, etc.,
and did cause, procure, suffer, and permit the said passenger
cars to be heated, by means of stoves kept inside of such
cars, etc.; that the defendants were directors of said com-
pany, and as such directors had the charge, control, and
supervision of the equipment, management, and opera-
tion of the said steam-railroad, and of the trains and cars
operated and used by it, and of the heating of the pas-
senger cars on its passenger trains, etc.; and then goes
on to charge that the defendants, so being such president
and directors as aforesaid, and so having the charge, con-
trol, and supervision of the equipment, management, and

operation of the said steam-railroad and of its trains and cars as aforesaid, and of the heating of its passenger cars as aforesaid, "then and there . . . were unlawfully concerned in the commission of the said crime and misdemeanor by the said corporation in manner and form aforesaid, and then and there unlawfully did aid and abet in its commission by the said corporation in manner and form aforesaid, and then and there unlawfully did directly counsel, command, induce, and procure the said corporation so to commit the said misdemeanor in manner and form aforesaid, against the form of the statute in such case made and provided, and against the peace of the people of the state of New York and their dignity."

FOURTH COUNT—The fourth count charges that the corporation maintained, used, and operated the railroad in question ; that the corporation heated the cars in a manner prohibited by the statute, and then goes on to charge that the defendants individually "were unlawfully concerned in the commission of the said crime and misdemeanor by the said corporation in manner and form aforesaid, and then and there unlawfully did aid and abet in its commission by the said corporation in manner and form aforesaid, and then and there unlawfully did directly counsel, command, induce and procure the said corporation so to commit the said crime and misdemeanor in manner and form aforesaid against the form of the statute in such case made and provided, and against the peace of the people of the state of New York and their dignity.

SIXTH COUNT—The sixth count charges, that the defendants, being the president and directors respectively of the corporation which operated, maintained, and used the steam-railroad in question, etc., etc., "did unlawfully cause and procure, suffer and permit the said steam-railroad to heat its passenger cars on other than mixed trains . . . by means of stoves kept inside of such cars . . . against the form of the statute in such case made and provided, and

against the peace of the people of the state of New York and their dignity."

*Page & Taft* (*Jas. C. Carter, Jno. M. Bowers, Thos. Thacher*, and *Jas. M. Townsend, Jr.*, of counsel), for defendants, in support of the demurrer,

I. The defendants contend that indictment only lies against the offending railroad if against any person or corporation.

Doubtless the legislature intended by the expression "steam-railroad," steam-railroad company, and the word "company" was omitted because in common speech "railroad" is often used to mean not the material structure, but the corporate entity.

But reading into the statute the word "corporation," it is made unlawful only for such corporation, not for any other person, to heat the cars in violation of the act.

The only person, therefore, on this extended construction of the act, who could violate the law is the corporation; for as to all other persons, the act would be as innocent as before the enactment of the statute.

That the word "corporation" may be read into the acts finds support in the third section, which is the next section requiring consideration.

That section reads: "Any person or corporation violating any of the provisions of this act shall be liable to a prescribed and very heavy penalty."

But from this it becomes apparent that it was the intent of the act that natural persons as well as corporations might violate its provisions, and, consequently, that it must have been the intent of the first section that the heating of cars by stoves should be made unlawful, not only on the part of the corporation, but on the part of at least some natural persons.

That the statute intended to reach all persons or corporations must be promptly rejected. This would include porters, train-hands, or other employees who actually put or

maintained the fires in the stoves, and would make it their duty, before complying with orders respecting the heating of the cars, to inform themselves as to the law relating to that matter, and obey or disobey, according as they should be advised, and at the peril of punishment. A construction so unfair and destructive to efficiency in railroad management will not be indulged.

The intent must have been to make the act unlawful only for some particular person or classes of persons and corporations. Who were they?

We know the fact that railroads are operated both by corporate bodies and by individuals as receivers, trustees in possession, and as members of reorganization committees.

The most reasonable conjecture, therefore, is that the legislature intended by section 1 to prohibit the use on steam-railroads of stoves for heating cars, and by section 3 intended to impose the penalty upon any corporation operating a railroad, or upon any individual—be he receiver, trustee, or otherwise—in possession, engaged in operating the road, and that it was not the intent of the statute to apply its penalties to the directors, employees, and train-hands of a railroad, whether operated by a corporation or an individual.

This being the fair interpretation of section 3 of the act, if the court will go further than to pronounce the act insensible and incapable of enforcement, what meaning will be attached to section 5, which reads : "The violation of any of the provisions of this act will be deemed a misdemeanor ?"

This section should be construed in conjunction with the first section alone, and the clear language would be "no steam-railroad shall heat its cars," etc., in section 1; and the steam-railroad that shall violate this provision shall be deemed to have committed a misdemeanor, section 5.

The road of this railroad company extends less than twenty-six miles in New York territory, and yet it is sought to impose a heavy criminal liability upon its direc-

tors, while the Grand Trunk and other Canadian railways would be absolutely free from prohibition or punishment of any kind for performing the very same act.

That grave constitutional questions of necessity arise in the interpretation of such legislation, especially when a criminal liability is attempted to be enforced against individuals not specified in the act, must be conceded.

In giving to this act the construction that its prohibitions and penalties apply at the utmost to a corporation or individual operating a road, we are sustained by many other statutory regulations of this state and by the only principles of law which can give any effect to the statute.

It is impossible that directors should come within the meaning of the phrase "any steam-railroad doing business in this state." The question now under consideration is: Can the directors of this Connecticut corporation, not as a board, but individually, be said to be a steam-railroad, or do business in this state?

The directors have no power except when together as a board they express the corporate will to do any of the business of the company.

It would be much nearer the truth to say that the stockholders composing the body corporate are a steam railroad than that the directors are.

Neither all the directors nor all the stockholders acting as individuals could bind the corporation.

(State v. Gilmore, 24 N. H. 461; Amer. Preservers' Co. v. Norris, 43 Fed. Rep. 711).

Our first point is, therefore, that the statute under which this indictment is found constitutes no crime as against these defendants or any of them.

Under the rule of construction applicable to a penal statute, it is impossible to bring within the limitations of the statute under which this indictment is found a misdemeanor against these defendants, and that the directors of a corporation are never responsible for the performance of a duty devolving by law upon the corporation itself.

It is a fundamental rule of the criminal law, especially applicable to the interpretation of statutes creating new offences, that unless the legislature has made it very clear what acts it designs to convert from innocence into crime, and what persons are to be made punishable therefor, the Court must treat the legislation' as insensible and dismiss any prosecution under it (Endlich on *Construction of Statutes*, §§ 329, 336).

The general rules as to the responsibilities of directors of corporations are shown in the following authorities: *In re* Montrotrier Asphalt Co. (Perry's Case, *L. R.* 20 *Eq.* 716); Arthur *v.* Griswold (55 *N. Y.* 406); Wakeman *v.* Daly (51 *N. Y.* 27); Movius *v.* Lee (30 *Fed. Rep.* 298); Hodges *v.* N. E. Screw Co. (3 *R. I.*, 9; same case, 1 *R. I,* 312); Vance *v.* Phœnix Ins. Co. (4 *B. J. Lea*, 389); Spering's Appeal (71 *Pa. St.* 11); Clews *v.* Bardon (36 *Fed. Rep.* 617).

The following authorities hold that the directors of a corporation cannot be made liable for the misfeasance of the corporation : State *v.* Gilmore (24 *N. H.* 461); Regina *v.* Pocock (17 *Q. B. Adol. & El.* 34); Commonwealth *v.* Demuth (12 *Serg. & Rawle*, 389); State *v.* Barksdale (5 *Humph.* 154).

In conclusion it may be said that People *v.* Kane (3 *Wend.* 363; 8 *Wend.* 203) sustains the views we have suggested, and that the indictment in that case was only permitted because it in plain words fixed the responsibility upon the directors as such.

Crowley *v.* People (83 *N. Y.* 464) also sustains our contention, except in so far as the court said that People *v.* Kane is authority for the proposition that the officers of a corporation might be indicted for the neglect of a duty resting upon them. Such is not the doctrine of Kane *v.* People, and such is not the doctrine of the reasoning of Cowley *v.* People.

II. Aiders and abettors do not come within the provisions of the statute under which this misdemeanor is found.

The intent of that act was to reach the person or body corporate operating the road. No person, whether he aided or abetted or not, the terms of any previous statute to the contrary notwithstanding, could become a principal under the provisions of that act, unless he operated or was a proprietor of the road. The intent of the statute was plain, and by implication repeals any prior provisions of law to the contrary. The true rule is that where it may be fairly inferred that it was the purpose of the legislature in creating a new offence to limit the guilt to those against whom the prohibition was expressly aimed or upon whom a duty was expressly imposed, the courts will so limit the act.

III. The defendants cannot be held as chargeable with the misdemeanor created by the car-heating act upon the ground that they aided or abetted or counselled, induced, caused, or procured the commission thereof under this indictment. If a person is outside of the class against whom the prohibition of a statute is directed, and it is thus legally impossible for him to directly violate such prohibition, he cannot be indicted as for the crime created by such statute. If he aids and abets another, he may be charged with the separate and substantive crime, if it be made such by law, of aiding and abetting, etc., but only under an indictment charging him with such specific crime (Shannon v. People, 5 *Mich.* 71), a decision whose soundness is intimated in People v. Bliven (6 *N. Y. Crim. Rep.* 365).

IV. If then the defendants can be charged, as aiders and abettors, only with the substantive crime of aiding and abetting, etc., and cannot be charged with the misdemeanor created by the car-heating act, they cannot be held as such aiders and abettors under this indictment. The authorities sustain this view (People v. Haight, 54 *Hun*, 8; People v. Dumar, 106 *N. Y.* 502–509; People v. Barber, 48 *Hun*, 198).

To constitute the crime of aiding and abetting there must be an intent to do so, and something done in pursu-

ance of such intent (*Bishop on Criminal Law*, 7th Ed., § 345; People v. Fulle, 1 *N. Y.* Crim. Rep. 172).

By section 323 of the Code of Criminal Procedure the defendant may object that the facts stated do not constitute a crime, not that a crime is not charged in the general language of the statute, but that the indictment does not distinctly state the particular facts out of which the law draws the conclusion that a crime has been committed; and in § 275 it is provided that the indictment shall state, not only the crime, but the act constituting the crime, and in 284 it is substantially required that the act or omission charged as the crime be plainly set forth.

The indictment does not charge any such crime. All the counts are stated to be for "the same misdemeanor."

"The indictment must charge the crime, and it must also state the act constituting the crime. The omission of either of these things would necessarily be fatal to the indictment" (People v. Dumar, 106 *N. Y.* 502; People v. Maxon, 10 *N. Y.* Supp. 593).

The indictment does not state any act or facts as constituting such crime, except that on the day when the corporation violated the statute, February 20, 1891, the defendants were its president and directors.

The act or facts constituting the misdemeanor under the car-heating act are stated. And if the case were within the rule upon which the decision in People v. Briggs (114 *N. Y.* 56) was based, the indictment would hold aiders and abettors, although it contained nothing about aiding and abetting. But if the defendants are to be held upon the distinct substantive crime of aiding and abetting, etc., the act or facts constituting that crime must be stated. It is not enough to say that they "aided and abetted" or the like—that is mere conclusion.

To aid, to abet, to induce, to procure, to cause—these all imply action of one kind or another. One cannot do these things by being merely passive (Brown v. Perkins,

1 Allen, 98; People *v.* Ah Ping, 27 Cal. 489; Butler *v.* Commonwealth, 2 *Duvall*, 285; Hilmes *v.* Strobel, 59 Wisc. 74).

V. If the indictment is to be regarded as charging the crime of aiding and abetting, it is demurrable, because more than one crime is charged within the meaning of sections 278 or 279.

VI. The first count is bad, because it contains inconsistent allegations, if "did cause, procure," etc., are to be deemed as alleging anything different from "did unlawfully heat."

A count containing inconsistent allegations cannot be said to contain "a plain and concise statement of the act constituting the crime," and is void for repugnancy (People *v.* Wise, 3 *N. Y. Crim. Rep.* 303; Rosekrans *v.* People, 3 *Hun*, 287).

If it is intended to charge two crimes, it is bad under sections 278, 279. In no case can two crimes be charged in the same count. The same is true of the second and fifth counts. So, too, in the statement of the principal crime committed by the railroad company in the third and fourth counts, there is the same double language.

VII. An important constitutional question as to the regulation of commerce underlies this entire statute (Leisy *v.* Hardin, 135 *U. S.* 100; Lyng *v.* Michigan, 135 *U. S.* 161; Bowman *v.* Railway Co., 125 *U. S.* 507).

VIII. The indictment is again defective in failing to specify the train on which the cars are said to have been heated in violation of the statute.

*De Lancey Nicoll*, district attorney (*McKenzie Semple*, assistant), in opposition to the demurrer.

Van Brunt, P.J.—In June, 1887, the legislature passed an act entitled "An act to regulate the heating of steam passenger cars, to provide for the placing of guards and guard posts on railroad bridges and tressels and the approaches thereto," by which it was enacted as follows:

"Section 1. It shall not be lawful for any steam rail-

road doing business in this state, after the first day of May, eighteen hundred and eighty-eight, to heat its passenger cars, on other than mixed trains, by any stove or furnace kept inside of the car or suspended therefrom,\ except it may be lawful, in case of accident or other emergency, to temporarily use such stove or furnace with necessary fuel. Provided, that in cars which have been equipped with apparatus to heat by steam, hot water, or hot air from the locomotive, or from a special car, the present stove may be retained, to be used only when the car is standing still. And provided, also, that this act shall not apply to railroads less than fifty miles in length, nor to the use of stoves of a pattern and kind to be approved by the Railroad Commissioners for cooking purposes in dining-room cars.

" Section 2. After November first, eighteen hundred and eighty-seven, guard posts shall be placed in the prolongation of the line of bridge trusses, so that in case of derailment the posts and not the bridge trusses shall receive the blow of the derailed locomotive or car.

" Section 3. Any person or corporation violating any of the provisions of this act shall be liable to a penalty of one thousand dollars, and to the further penalty of one hundred dollars for each and every day during which such a violation shall continue.

" Section 4. Upon application of any railroad covered by the provisions of this act the Board of Railroad Commissioners may approve of any proposed safeguard or device to be used under the provisions of this act, and thereafter the railroad using such safeguards or device so approved shall not be liable to any of the penalties prescribed by this act for a violation thereof in regard to any such safeguard or device.

" Section 5. The violation of any of the provisions of this act will be deemed a misdemeanor."

" Section 6. This act shall take effect immediately.

In 1888 this act was amended, extending the time in which it should not be lawful to heat the passenger cars as

specified in said first mentioned act; and authority was also given to the Board of Railroad Commissioners to further extend the time for a period not exceeding one year from the first of November, 1888.

In 1889 the act of 1887, as amended in 1888, was further amended by the extraordinary provision that it should not apply to " the cars of foreign railroad companies incorporated without the jurisdiction of the United States hauled upon tracks in this state for a distance of less than thirty miles;" thus granting to a foreign corporation privileges which were denied to the citizens of our own and of adjoining states.

In 1890 the statute was further amended in some immaterial particulars.

In March, 1891, the defendants were indicted for a misdemeanor, because of an alleged violation of the statute in question, in the month of February preceding, in the heating of passenger cars of the New York, New Haven and Hartford Railroad by means of stoves.

This indictment originally contained seven counts, two of which (the fifth and the seventh) have been withdrawn by the district attorney; and to each and every of the remaining five counts in the indictment the defendants have demurred upon the ground that the facts stated in neither of said counts constituted a crime; and upon the further ground that the facts therein did not constitute a crime as against the defendants or any of them; and upon the further ground that more than one crime is charged in the indictment; and upon further ground that the indictment in form does not conform to the Code of Criminal Procedure.

It is not necessary, in the disposition of this demurrer, to consider in detail the five counts in the indictment, because it will appear upon an examination thereof that it is therein alleged that the New York, New Haven and Hartford Railroad Company was a corporation, duly organized under the laws of the state of Connecticut, and maintained, used, and operated the railroad in question, which

was more than fifty miles in length, and twenty-six miles of which was within the state and ten miles within the city and county of New York; and that the defendants are therein individually charged by the counts of the indictment with doing the forbidden act or with causing or procuring, suffering and permitting it to be done, or with directly counselling, commanding, inducing, and procuring it to be done, or with being concerned in or with aiding and abetting in the doing of the act upon said railroad.

It is urged that because of the language of the statute which provides that it shall not be lawful for *any steam railroad* doing business in this state to heat its cars, etc., and because a steam railroad is an inanimate object, destitute of will, is not a person, and cannot perform any act whatever, that the attempt to impose a duty upon such an inanimate object, or to impute to it any act with a view to making such act unlawful is insensible, and consequently not effectual for any purpose.

I think that an examination of the statute raises no such difficulty as that which is suggested in the position above taken. The legislative intent seems to be plain, and to the effect that no railroad in this state shall be operated with cars heated in violation of the act in question. By whom said railroad is operated is entirely immaterial; the offence being committed when the act is committed, no matter by whom.

This view of the legislative intention is peculiarly emphasized by the provisions of section 3 of the act, which provides a money penalty for its violation. That section states that any person or corporation violating any of the provisions of this act shall be liable to a penalty of $1,000, and to the further penalty of $100 for each and every day during which such violation shall continue. Here it is clear that the operator of the railroad, whether a person or a corporation, is alone liable for the penalty. This is manifestly the intention of the act. But when the legislature came to provide that the violation of the provisions of the act should

be a misdemeanor, they limit it to no persons or corporations; they simply say "the violation of any of the provisions of this act shall be a misdemeanor;" not that any person or corporation operating a railroad violating this act shall be guilty of a misdemeanor, but that any violation of this act by anybody shall be a misdemeanor—language much broader than that contained in section 3, above quoted.

But it is urged that the most that can be imported in the act would be a prohibition against any corporation or persons operating this road from doing the prohibited act; and that this affords no justification for an attack upon the agents or servants of the corporation. It is said it is made unlawful for such corporation, but not for any other person —not for a porter or employee or for a director—to heat the cars in violation of the act.

I think that the consideration of a few elementary principles governing the responsibility of principals and accessories (so called) for the commission of misdemeanors, and of agents for acts done in their representative capacity, and of directors and agents of corporations for acts done by the corporation, will show that this position is not well taken.

It was long the rule of law that corporations could not be indicted for a misdemeanor; and it seems to have been the practice in such a case to indict the persons who were individually responsible for the acts resulting in the violation of the law (1 *Archbold Crim. Prac. and Plead.* 8–9). Thus, in the case of Rex *v.* Medley (6 *Car. & P.* 292), a conviction for maintaining a nuisance by a gas company was sustained against the executive officers, superintendent, and engineer of the company. The reason that no indictment could formerly be found against a corporation for a crime seems to have been founded, although some writers give a different reason, entirely upon the fact that, as a defendant could not then appear by attorney or agent, the indicted corporation could not be brought into court. It

could not come itself into court, and it could not appear by an agent or attorney, and consequently there was no way in which the court could proceed against the corporation. But as soon as parties were permitted to appear in some courts by attorney, although not so permitted in others, it was held that a corporation was liable to indictment in a court in which they were not allowed to appear by attorney; the practice being, when the corporation was indicted in such a court, to remove the indictment by *certiorari* into a court where such corporation might appear by attorney and there be called upon to plead (Reg. *v.* Birmingham & Gloucester R. Co., 9 *Car. & P.* 469). In the case cited, the corporation had been indicted at the assizes where defendants were not permitted to appear by attorney; and the indictment was removed by *certiorari* to the queen's bench, where they could appear by attorney. And upon a motion to quash the indictment as not maintainable against a corporation, the court refused to quash upon the ground that a corporation aggregate might be indicted by their corporate name (s.c., 3 *Adolph & Ellis, N. S.* 223). And it has since been the law that a corporation might be indicted for a misdemeanor.

It having been established that a corporation may be indicted for a misdemeanor, the next question presented is, Can any person or persons be guilty of a criminal violation of a statute directed against such corporation? I think that any person or persons participating in the violation of the statute by the corporation may, under our statutes, be indicted as principals, either because they have directly committed the act or have aided and abetted in such commission.

In hostility to this view, in respect to the particular statute under consideration, attention is called to certain other legislation which it is claimed shows that where it is intended that any person or persons shall be guilty of a misdemeanor, for which the statute declares a corporation operating a railroad shall be responsible, he or they have

been specifically named, and that the want of such language shows an intention that the corporation alone shall be subject to indictment.

Thus chapter 439 of the Laws of 1884 is referred to, by which it was enacted that steam-railroads shall lay switches of certain kinds, and that for each switch laid in violation of the provisions of law the corporation, person, or persons operating said railroad shall be liable to a penalty. Another section makes provision that every steam-railroad shall erect warning signals, and, in the same language as before, puts a penalty for failure upon the corporation, person, or persons operating such railroad; it being claimed that the only person liable under this act is the corporation operating the road, if it is operated by a corporation, or the natural person or persons operating it if no corporation operates it.

This is undoubtedly correct, because the only penalty attached to a violation of the law is of a pecuniary nature, and likens it to the provision of section 3 of the act under consideration.

Attention is also called to another section of said act which expressly imposes a penalty upon the engineer for failing to stop at cross-roads. This, again, is a pecuniary penalty, and is only incurred by the persons mentioned in the statute. So with the other provisions of the act in question.

We are also referred to chapter 524 of the Laws of 1889, which requires all persons and corporations operating any line or lines of railway to use automatic self-couplers; and provides that any person or corporation operating a line of railroad by steam in this state, who shall fail or neglect to comply with its provisions, shall be guilty of a misdemeanor, and, on conviction, shall be punished by a fine. In this case the legislature thought it necessary (as it undoubtedly was) to provide for the protection of employees by inserting a clause to the effect that employees should not be deemed guilty and subject to punishment under this

act. Although the legislature, in the act last cited, only provided that any person or corporation operating a line of railway should be guilty of a misdemeanor, yet, recognizing the well established principle (to which attention will hereafter be called) that even under such circumstances employees would be liable as agents, they expressly excluded such liability, there being a criminal liability in this act which did not exist in the act previously cited. Attention is also called to the provisions of the Penal Code, in which there are enactments against individuals connected with corporations, but which contain no provisions against the corporations themselves. But we do not see how these enactments in any way affect the question under discussion, as they afford no guide whatever to the legislative intention in respect to the construction of an act such as is now under consideration.

It is an elementary principle that in misdemeanors there can be no accessories, and this was incorporated into the Penal Code in section 31, which is as follows: " A person who commits or participates in an act which would make him an accessory if the crime committed were a felony is a principal and may be indicted and punished as such, if the crime be a misdemeanor;" this section being but a simplification of the rule laid down in 1 *Hale's Pleas of the Crown* (613), where he says: "In cases that are criminal, but not capital, as in trespass, mayhem or *praemunire*, there are no accessories, for all the accessories before are in the same degree as principals." The same author states that " as to felonies by act of parliament regularly, if an act of parliament enact an offence to be felony, though it mentions nothing of the accessories before or after, yet virtually and consequentially, those that counsel or command the offence are accessories before and those that knowingly receive the offender are accessories after."

Section 682 of the Penal Code extends this rule in regard to felonies to misdemeanor (if it had not previously existed, which, however, seems to be the fact), because it

provides that when an act or omission is declared by statute
to be a misdemeanor, and no punishment for aiding or
abetting in the doing thereof is expressly prescribed, every
person who aids or abets another in such act or omission is
also guilty of a misdemeanor.

Blackstone in his Commentaries, book 4, p. 34, alludes
to the fact that there are no accessories in crimes under the
degree of felony. He says in high treason there are no
accessories, but all are principals. The same acts that make a
man accessory in felony make him a principal in high treason
upon account of the heinousness of the crime. Besides,
it is to be considered that the bare intent to commit treason
is many times actual treason, as imagining the death of the
king or conspiring to take away his crown. And as no one
can advise and abet such a crime without the intention to
have it done, there can be no accessories before the fact
since the very advice and abetment amount to principle
treason. . . . In felonies there may be accessories except
only in those offences which by judgment of law are sudden
and unpremeditated, as manslaughter and the like, which,
therefore, can have no accessories before the fact. So, too,
in larceny, and in all crimes under the degree of felony,
there are no accessories either before or after the fact, but
all persons concerned therein, if guilty at all, are principals;
the same rule holding with regard to the highest and lowest
offences, though upon different reasons. In treason all are
principals *propter odium delicti.* In trespass all are prin-
cipals because the law *quae de minimis non curat* does not
descend to distinguish the different shades of guilt in petty
misdemeanors.

Thus it will appear that although the statute declaring
an act or omission to be a misdemeanor makes no mention
of aiders and abettors in the doing thereof, every person
who aids and abets another in such an act or omission is also
guilty of a misdemeanor, and such person aiding and abet-
ting is guilty of misdemeanor as a principal and may be
indicted and punished as such.

In the case of Brockway *v.* People (2 *Hill*, 558) it appears to have been decided that the renting of a house to a woman of ill-fame with intent that it should be kept for the purpose of public prostitution was not an offence punishable by indictment, though it be so kept afterwards, upon the ground that it did not tend directly and immediately to the commission of the misdemeanor.

Upon a reference, however, to the case of People *v.* Erwin (4 *Den.* 129), it will be seen that the authority of this case was absolutely denied, and that it was held that all those who did so abet the commission of a misdemeanor are principal offenders, and that one who demises a house with the intent that it should be kept, and which was accordingly kept, for the purpose of public prostitution, and who derived a profit from that mode of using the property, was punishable by indictment for a misdemeanor, and that the indictment should charge the defendant as keeper of a bawdy house in the ordinary form. The court say : " In misdemeanors there are no accessories as there are in other cases, but all the guilty actors, whether present or absent at the time the offence was committed, are principals, and should be indicted as such." In Brockway *v.* People this rule was not followed. The defendant was indicted for demising his house to be kept as a common bawdy house, when the charge should have been that he kept the house. And it is said by the opinion that it was because of this defect in the indictment that the conclusion in that case was concurred in ; and then the court say : " In this case the owner of the property, as well as the woman, has been directly charged with keeping the house. The indictment is right, and we think the instruction given to the jury was substantially correct. The man who demises a house to be kept as a disorderly house, and which is so kept with his knowledge, especially where, as in this case, he derives a profit from this mode of using the property, may be called the keeper of the house and may be punished as such."

In the case of Lowenstein v. People (54 *Barb.* 299) the
case of People v. Erwin is approved. In the case cited, the
defendant was tried, convicted, and sentenced upon an in-
dictment containing four counts, the first being for keeping
a disorderly house ; the second for keeping a gambling
house ; the third for keeping a bawdy house, and the fourth
for renting a house with intent that the same should be
kept for the purpose of prostitution.

The evidence given by the people tended to show that
the defendant was occasionally in the block ; that he re-
ceived rent from some of the rooms, and that the inmates
of different rooms of the house were prostitutes. It was
shown on the part of the defendant that he did not own
the house ; that the same belonged to his wife, in whom
the title was, and that all the defendant did was to act as
her agent in collecting the rents for her. Upon the close
of the evidence for the prosecution a motion was made,
which the court granted, to quash the last count of the in-
dictment ; that is, the count for renting the house with
intent that the same should be kept for the purpose of
prostitution.

At the close of the case for the defendant, the counsel
for the defendant moved his discharge, upon the ground
that he was not the owner of the block of houses desig-
nated, but at most a mere agent in the renting and collect-
ing rents of the tenants who occupied the block, another
person being at the same time the absolute and separate
owner thereof. This motion was overruled, and, upon
appeal, the court, referring to the case of People v. Erwin,
says that it decides that the owner of a house who lets
it to be kept and used as a house of prostitution is to
be deemed to keep such house, and is liable to indict-
ment and conviction as the keeper of a bawdy house ;
and that the principle of this rule applies to any person
who is *personally* concerned in the keeping of such a
house. In misdemeanors there are no accessories. All
who procure counsel and aid or abet the commission of the

crime are principals. The court further says that "the defendant confessedly had the control of the premises in question, and knowingly rented the building for and permitted it to be used as a house of prostitution. It matters not in what capacity he exercised such control over the house ; there are no agencies in crime ;" the result of this decision being that as the defendant did in fact *personally* commit the crime he was liable therefor.

Thus we see that agents acting for principals are liable for offences committed against the statute. Directors are but agents of a corporation, and if they *personally* commit an offence, or aid or abet in its commission, upon this principle they are clearly indictable as principals.

But it is said this view is in hostility to numerous decisions holding that where an act of the legislature creates a new offence, guilt for violation of the statute is limited to those against whom the prohibition is by the statute directed. And attention is called to the cases of State *v.* Gilmore (24 *N. H.* 461) ; Queen *v.* Pocock (17 *Q. B. Ad. & El.* 34), Commonwealth *v.* Demuth (12 *Serg. & Rawle,* 389), State *v.* Barksdale (5 *Humph.* 154), and People *v.* Kane (3 *Wend.* 63, in supreme court, and s.c., 8 *Wend.* 204, in court of errors).

An examination of those authorities, however, will show that none of them hold that the agent of a corporation is not liable to indictment for doing an act which the legislature has by statute prohibited the corporation from doing, and which statute has been violated by such agent personally, acting for the corporation, where a violation of the act by the corporation has been declared to be a misdemeanor.

In the case of the State *v.* Gilmore (*supra*) an indictment was found against five parties who were stockholders, directors, and the principal officers of the Concord & Clermont Railway Co. The act under which the indictment was found was to the effect that "if the life of any person not in the employment of the corporation shall be

lost by reason of the negligence or carelessness of the proprietor or proprietors. of any railroad, such proprietor or proprietors shall be liable to a fine not exceeding $5000, to be recovered by indictment." The proof showed that it had been voted to require the railroad to construct bridges or erect gates at a certain crossing where the accident happened. Notice of the order had been duly served, and proceedings were pending by the railroad company to avoid its effect at the time of the accident; the order had not been complied with, and the accident resulted from non-compliance; and it was finally decided that an indictment could not be maintained against a stockholder, director, officer, or any person, but only against the corporation. It will be observed, in the first place, that no crime is attached to the violation of the statute. All that the offender was subjected to was a fine, to be collected by means of an indictment; and, secondly, the case was of a class to which those hereinafter cited belong, namely, where the offence of the corporation consisted in not doing something which the proprietor or proprietors of the road were required to do.

The Queen v. Pocock is of a similar character. In that case it was sought to hold the trustees of a road district, who had power to contract for repairing the roads, chargeable with manslaughter because of a person using one of such roads being accidentally killed in consequence of the road being out of repair, through neglect of the trustees to contract for repairing. The court said : " I am clearly of opinion that the inquisition is bad and must be quashed. No doubt, the neglect of a personal duty where death ensues as the consequence of such neglect renders the party guilty of it liable to an indictment for manslaughter, and the cases which have been cited in the course of the argument and which establish that doctrine are good law. But how can the principle apply to the present case? It cannot be said that the trustees are guilty of a felony in neglecting to contract. Not only must the neglect, to make the party guilty of it liable to the charge of felony, be personal, but

the death must be the immediate result of that personal neglect. According to the argument here, it might be said that where the inhabitants generally are bound to repair, and a death is caused as in the present case, all the inhabitants are indictable for manslaughter." In this case, also, it appears that the offence arose from neglect, and neglect only, precisely the same as the New Hampshire case cited.

The case of Commonwealth v. Demuth (*supra*) was an indictment against the president and twelve other defendants, being the directors and managers of the York and Gettysburg Turnpike road. The indictment contained five counts, the first four of which charged the defendants as president and managers of the York and Gettysburg Turnpike road. The act complained of was the maintenance of a gate across the turnpike road, thereby preventing its use, and the charge was that it was done unlawfully, injuriously, and maliciously.

It appears that, upon the trial, the first four counts were abandoned, and the commonwealth relied upon the fifth count only, which charged the defendants with locking and fastening a certain toll-gate erected and placed across the turnpike road aforesaid, and keeping the gate locked and fastened.

It appeared that this company had authority to erect this toll-gate, but that subsequent to its erection an act of assembly was passed by which there was a prohibition to erect or set up in future any toll-gate on the York and Gettysburg turnpike road within half a mile of the borough of York, and the president, manager, and company of said turnpike road (that being their corporate name) were directed to move the gate then standing at Bottstown, the gate in question, within six months after the passage of the act, to a distance of not less than half a mile from the borough of York. And the court, in disposing of the case, say : "It is plain enough that it was upon this act of assembly requiring the removal of the toll-gate that the last count of the indictment was intended to be framed although

there was no mention made of the act, or that the offence is in violation of it. But I do not perceive that the defendants individually were guilty of any offence. They had a right as president and managers of the company to erect the gate at Bottstown and the company in their corporate capacity, and not the defendant individually, were ordered to remove the gate by the act of the 21st of March." This case again was an indictment found upon a neglect of the corporation to comply with the requirements of a legislative enactment.

In the case of the State v. Barksdale (supra), the mayor of the town of Clarksville was found guilty on indictment against the corporation because there was a public street in a ruinous condition and out of repair. And the court say : " Thomas W. Barksdale, mayor of the town of Clarksville, is individually found guilty upon a charge that a street in a town was permitted to remain out of repair. He is not responsible individually therefor. The corporation is bound to keep the streets in repair, and for neglect in doing so, may be indicted and fined, but no member of the corporation is individually responsible for such neglect."

In this case it will be seen that the party convicted was not indicted individually, but simply in his corporate capacity, and besides it was simply because of the neglect of his corporation.

In the case of The People v. Kane (supra), the defendants being the president and two of the directors of the Mohawk Turnpike Co., were individually indicted for manslaughter. The fact charged, in which the offence consisted, was that the road belonging to the company of which they were the president and two of the directors, was and had been out of repair for a length of time. The defendant Kane was convicted and the others acquitted. By the fifth section of the act incorporating the Mohawk Turnpike and Bridge Company it is made the duty of the president and directors of the company to keep the road in good repair. The seventh section reads as follows : " And every neglect to keep

and preserve the road in such repair shall be taken, adjudged and deemed a misdemeanor in the president and individual directors for the time being of said company."

SAVAGE, C.J., says: " Several grounds have been urged as error and relied on to reverse this judgment, neither of which can be sustained. It is said that the act under which the conviction was had does not make the officers personally liable. The language of the act is that every neglect to keep and preserve the road in good repair shall be deemed a misdemeanor in the president and individual director, for the time being, of the company. If the individual officers are deemed guilty of the offence they must be individually punishable which must be personal. No statute was necessary to make the road itself indictable as a nuisance; upon such an indictment, however, the officers would not be liable to punishment individually; where the legislature makes them thus liable they can mean nothing else but that they are to be personably liable." And further on it is said, " And as the liability is individual, I can see no reason why the prosecution may not be against each separately."

In the court of errors it was said: " In the case before us the statute has declared that a neglect of duty by those who were chargeable with the repairs for the time being should be a misdemeanor in them individually. They are, therefore, individually liable to be indicted and punished for their neglect." And Senator Seward says: "The true as well as obvious construction of the act I think is this— that in order to secure the performance of the duty enjoined upon the corporation, the persons who may hold the offices of president and directors are made individually liable for the neglect of the corporation. The use of the words 'individual director' can have no other sensible meaning."

This case is precisely the same as those which have been previously cited, because it was an indictment for neglect.

A brief consideration of the provisions of the act in

question in this case will show that the cases just cited have no application to the question before the court.

It is provided by that act that it shall not be lawful for any steam-railroad doing business in this state to heat its passenger cars on other than mixed trains by any stove or furnace kept inside the car or suspended therefrom.

It is not provided that the corporation shall remove the stoves from the cars. It is not provided that it shall be a misdemeanor if they keep the stoves in the cars.

It is not provided that it shall be a misdemeanor under all circumstances for them to use such stoves for the purpose of heating the cars.

It is only provided that it shall be a misdemeanor to heat their passenger cars on other than mixed trains by such stoves when such cars are in motion.

There is no requirement that the corporation shall do anything. Should the corporation fail to remove the stoves —fail to heat the cars, it does not seem that there would be any violation, even by the corporation, of any of the provisions of this act. It is only when the affirmative act of heating the cars when in motion by the stoves is done, that the crime is committed. And the provision making it a crime to do this thing is as general as language can make it. It is " the violation of any of the provisions of this act shall be deemed a misdemeanor." The defendants are by the indictment charged with actually doing the thing in violation of the statute. Hence we see the marked distinction between the cases cited and the one at bar ; the cases cited being cases of mere neglect, and the case at bar being directed against an affirmative criminal act.

And furthermore, in considering those counts of the indictment which charge the defendants with aiding and abetting the commission of the offence, it will be seen at a glance that the cases cited have no bearing, because it is difficult to see how a party can aid and abet another in simply a failure to act.

Archbold, in his treatise on Criminal Practice and Plead-

ing (vol. I. pp., 8–9), recognizes the distinction between in-dictments of corporations for nonfeasance and misfeasance, which seems to have existed for some time, they being in-dictable for nonfeasance long before they were made subject to indictment for misfeasance.

It would seem that as soon as corporations could appear in court by attorney they were held liable to indictment for breach of duty as heretofore shown; but in cases of wrong-ful acts it was not until a considerable time after that cor-porations were made subject to indictment, probably because as the members of the corporation actively participating in the doing of the wrongful acts could be punished, the ends of justice were subserved.

The claim is made that the defendants cannot be held as chargeable with a misdemeanor created by the car-heating act, upon the ground that they aided or abetted, counselled, induced, caused or procured the commission thereof, under this indictment, for two reasons: First, that it was the plain intention of the legislature to limit the guilt for the violation of the act to those against whom the prohibition was ex-pressly aimed, viz.: the corporation or person operating the road; and, secondly, because if a person is outside of the class against whom the prohibition of the statute is directed, and thus it is legally impossible for him to directly violate such prohibition, he cannot be indicted as principal for the crime created by such statute; and as by the indictment under consideration the defendants have been indicted in all the counts for the same misdemeanor, even if they could be charged as aiders and abettors upon a proper indictment, it could only be with the different and substantive crime of aiding and abetting, and they cannot be charged directly with the misdemeanor created by the car-heating act, be-cause of aiding and abetting.

In reference to the first ground above stated, if the construction of the act bore out the claim made by the de-fendants, such position would be well taken; because it is undoubtedly true that where it is the intention of the legis-

lature, to be gathered from the act, that in creating a new offence it intended to limit the guilt to those against whom the prohibition was expressly aimed—none others are liable.

But the act exhibits no such intention. As already stated, the act makes it unlawful for any steam-railroad to heat its passenger cars, etc. It prescribes a money penalty against any person or corporation who violates the act, limiting the money penalty to any person or corporation operating the railroad. But when it comes to declare the violation of the provisions of the act to be a misdemeanor, there is no limitation whatever. The language is general and applies to every corporation or person coming within the scope of the act and the provisions of the penal law.

Therefore, it is clear that there was no intention to limit the criminal section of the act further than statutory construction requires that it should be limited.

The case of the Commonwealth *v.* Willard (22 *Pick.* 476), is not only not in hostility to this view, but, in view of the peculiar condition of our statutes, seems to support the same.

In that case the charge was the sale of spirituous liquors in violation of a statute making such sale a misdemeanor, and the purchaser refused to testify, on the ground that his having induced another to commit a misdemeanor was an offence which exposed him to punishment, and the court held that, as the statute imposes a penalty on every person who should sell, and as every sale implied a purchaser, and this fact must have been known and understood by the legislature, if it were intended that the purchaser should be subject to any penalty, it is to be presumed it would have been declared in the statute, either by imposing a penalty upon the buyer in terms, or by extending the penal consequences of the prohibited act to all persons aiding, counselling, or encouraging the principal offender; and there being no such provision in the statute, there is a strong implication that none such was intended by the legislature.

In the case at bar there is such a provision in the statute, being included therein by force of section 682 of the Code, and there being no intention expressed by the statute to take it out of the general provisions of law, this section of the Code must necessarily apply.

In support of the second ground, our attention is called to the case of Shannon *v.* People (5 *Mich.* 71), where an indictment was found under a statute which made it a crime for a father, mother, or person to whom a child had been confided, to expose it with the intention of abandoning it. The defendants having aided and abetted in such crime, but not being father, mother, or a person to whom the child had been confided, were indicted for the principal crime of abandonment; and the court there held that, as the commission of the principal offence by any one not sustaining any of the relations prescribed in the statute is legally impossible, the defendants must be guilty, if at all, as an aider and abettor, and in such case his guilt will consist solely in the aiding and abetting; which in a case of this kind, since accessories are abolished, must be a substantive offence or no offence at all; and as the offence in such a case consists solely in the aiding and abetting, this circumstance must be alleged in the indictment or the offence does not appear. He must be indicted under the statute which he had violated, and not under that which he did not violate; and he cannot be indicted as a principal where he only becomes guilty by the aiding and abetting; but if indictable at all, he must be indicted specifically for the aiding and abetting as a substantive offence, and reference is made to the case of Rex *v.* Douglas (7 *C. & P.* 644, and Reg. *v.* Bird, 2 *C. & K.* 817). These cases were cases of concealment of birth under a special statute where aiding and abetting by a distinct section of the statute is declared to be a misdemeanor, and do not seem to be any authority for the general provision.

Upon a consideration of the counts of the indictment in the case at bar it will be seen that even if the case in ques-

tion is to be considered as an authoritative exposition of the law, which it is not, being in direct conflict with the case of the People *v.* Erwin, some of the counts conform to the requirements prescribed in that case ; because the defendants are indicted for aiding and abetting .in the commission of the offence, thus complying with the very requirements set forth in the case cited.

But, under these circumstances, it is claimed that the indictment is demurrable, because more than one crime is charged in the same count (§§ 278, 279 of the Penal Code), the one crime being the doing of the act and another and distinct crime being that of aiding and abetting in the doing of the act.

Prior to the Penal Code the rule was that, in cases of misdemeanor punishable by fine and imprisonment, the prosecution might join several distinct offences which related to the same transaction in the same indictment and tried at the same time (1 *Chitty Crim. Law*, 254). And sec. 31 of the Penal Code was but a recognition of this rule, providing that accessories, if the crime be a misdemeanor, may be indicted and punished as principals. Therefore, but one crime is committed, whether the evidence tends to show the crime to have been directly committed by the defendant, or that he aided and abetted in the doing of the crime, bringing the case within the provisions of sec. 279, which provides that the crime charged may be charged to have been committed in a different manner or by different means.

It is the same misdemeanor, whether committed by the principal or accessory, as both are principals; guilt, however, being dependent upon proof of a different state of facts. This is evident upon a consideration of what section 682 has read into the statute in question.

This section provides that when an act or omission is declared by statute to be a misdemeanor, and no punishment for aiding and abetting in the doing thereof is expressly prescribed, every person who aids or abets another in such act or omission is also guilty of a misdemeanor—

not a different misdemeanor necessarily.    And the fifth sec-
tion of the act in question, in view of this provision of the
Code, is to be construed as though it read, "the violation of
any of the provisions of this act, or the aiding and abetting
in such violation, shall be deemed a misdemeanor."

But, even if this were not true, under sec. 279 of the Code
it is provided that where the acts complained of may con-
stitute different crimes, such crimes may be charged in sep-
arate counts; and the mere use in the indictment of the
words "same misdemeanor" does not take the case out of
the provisions referred to, because it is evident that it was
the intention of the pleader, in using the words "same mis-
demeanor," to refer to the fact that the offence arose from
the same heating of the cars by the stoves, and nothing more.

It seems to me it would be a forced construction of the
indictment to hold, if without the presence of the word
"same," different offences would be charged in the indict-
ment, that the language is to be so construed.

The result, therefore, seems to be that where a statute
prohibits the doing of an act by a class of persons and
makes any violation of that act a misdemeanor, all active
participants in such violation are equally guilty, be they di-
rectors or other agents or servants of the corporation; the
directors not because they are directors, but personally; no
individual, however, being liable who does not personally
participate in the doing of the act; but that mere neglect
to act does not constitute a crime, except against the class
upon whom the duty is imposed.

This is in harmony with the principles laid down *in Re*
Montrotier Asphalt Co., Perry's case (*L. R.* 20 *Eq.* 716),
where it was held that a director was liable for all that he
did as director of a corporation, but not for wrongs done at
a board meeting, he not being present.   So in the cases of
Arthur *v.* Griswold (55 *N. Y.* 406), and Wakeman *v.* Dal-
ley (51 *N. Y.* 27), in which it was held that the mere fact
of being a director or stockholder of a corporation did not
make him liable for frauds and misrepresentations of the ac-

tive managers of the corporation, but that some knowledge of and participation in the act claimed to be fraudulent must be brought home to the person charged.

The case of Crowley v. People (83 *N. Y.* 464) is entirely in accord with this view. In that case the defendant was not permitted to escape from his own direct malfeasance and violation of the statute by the argument that he had clothed himself with the protection of a corporate capacity. It is true that in the discussion of that case the learned judge who wrote the opinion devoted a considerable part thereof to showing that because of the peculiar language of the act the defendant, the secretary and manager of the institution was personally liable to indictment. And it is said that it had been for years the law of this state that an officer of a corporation might be indicted for the neglect of a duty resting upon it, citing Kane v. People (*supra*) as an authority; which, however, did not sustain the proposition, as in the act then under consideration the president and directors were expressly made individually responsible by statute, as has been already seen.

The learned court, however, held that as the defendants did have the actual immediate physical care and custody of the child, he came within the provisions of the act, and could not shelter himself, as already stated, under the fact that he was the officer of a corporation.

Therefore, in the case at bar, the defendants cannot be held liable, as already stated, merely because they are directors; but they must be shown to have personally participated in the commission of the offence for which the indictment has been found; and if the evidence upon the trial does not reach this dignity, then it is clear that no offence is made out. Such is the principle of all cases cited, particularly the case of Erwin v. People (*supra*), in which the fact of personal participation is made the turning point of the case. And it must be so, because a person cannot be vicariously guilty of a crime.

This fact, however, cannot sustain the demurrer to this

indictment, because the indictment charges these defendants with actively participating in the commission of the offence, either directly or as aiders and abettors.

It is, however, suggested that a foreign corporation cannot be indicted, and therefore, if there is no principal, there can be no accessories. But, even if this were so, where, by the law, one who aids and abets another in the commission of a misdemeanor is also guilty of a misdemeanor and is a principal, the inability to punish some one else can in no way affect the ability to punish the aider and abettor. There is no such thing as secondary liability in misdemeanors. All, the principal actors and aiders and abettors, are guilty of one and the same crime, and all are principals, and consequently may be separately punished.

The claim that the indictment does not charge any fact or facts constituting a crime, but simply the crime, is not well founded. The indictment, in some counts, charges that the defendants did the act which constituted the crime, and in others that they counselled, aided, and abetted in the doing of the thing. It is not the office of an indictment to set out the evidence. If conclusions of fact are stated, which facts, if true, constitute a crime, that is all that is necessary. The evidence to establish these conclusions forms no part of the indictment. The office of an indictment is to inform a defendant of the reasons he is charged with crime; not to inform the defendant what the evidence is which establishes the charge.

Upon the whole, therefore, I am of the opinion that the demurrer should be overruled, with liberty to the defendants to withdraw the same and plead anew to the indictment.

Demurrer overruled.

----

After the decision of the court on the demurrer, the case proceeded to trial on 22d June, 1891.

A motion was made upon this trial by John M. Bowers, counsel for the defendants, at the close of the prosecu-

tion's evidence, that the indictment against Director Leverett Brainard be dismissed.    Presiding Justice VAN BRUNT said he would not hear extended argument in the case of each director.    Thomas Thacher, Mr. Bowers' associate, presented the motion.    He said that, as it had not been shown that Mr. Brainard had either actively participated in heating cars in a manner contrary to law, or had, by positive and affirmative act, caused it to be done, he should be discharged.    The statute did not command positive action, it simply forbade certain action on the part of railroad corporations.    The only evidence tending to convict Leverett Brainard of the misdemeanor charged was the simple fact that he was a director of the New Haven road.

In behalf of all the other defendants the same motion was made pro forma.

District Attorney Nicoll replied.    He said : " It has been shown that the directors all had a personal knowledge of the manner in which the road was operated.    The powers in reference to the management of the road conferred upon the directors by the by-laws had been shown.    These directors had a complete, direct, and immediate control over all the agents of the road, including those who actually performed the task of heating the cars."

Mr. Bowers took the position that the Car Stove Act imposed a duty upon railroad corporations and not upon the boards of directors of such corporations.    Hence, in action on the part of the New Haven directors, in a case where no duty was imposed upon them, did not amount to active participation in the commission of a misdemeanor.

Presiding Justice VAN BRUNT, in directing the acquittal, said :

" Notwithstanding the ingenious argument of the district attorney, I am of the same opinion as I was at the time of the decision, and that I was right in the assertion I made at that time, that no one can vicariously commit crime. For the purpose of attacking the proposition a large number of cases have been cited, and in the opinion of the

district attorney the proposition has been successfully attacked. But I think that on investigation and consideration of these cases—with the exception of one, and that one was before me—they only enforce the proposition which I then announced. The cases which have been cited are those where a principal has been held liable criminally for an act of an agent, which act of an agent has been done within the scope of his authority, and there are a large series of cases of that kind. A principal is held liable if he actually participates in the act, the agent acting pursuant to authority within the scope of the powers conferred by the principal; and therefore when the principal is held responsible he is not vicariously suffering, but suffering for his own act. Now, the position of the defendants under this indictment is entirely different. They are not principals. The New York, New Haven and Hartford Railroad is the principal. The directors are but the servants and agents of the road. The employees who are employed by them, pursuant to the authority which the New York, New Haven and Hartford Railroad conferred upon them, are their co-servants, as to speak, and the doctrine of the relation of responsibility to a superior must apply. If the New York and New Haven Road were on trial in this indictment, then the principles which have stated by the district attorney would have been entirely applicable, because a corporation can only act through its agents, and when it acts through them a corporation is liable for the action of its servants. Therefore it does not seem to me that this case or that principle has any application to the case involved, but, as was intimated in the opinion which I gave upon the demurrer, it was my opinion that, as far as the employees of the road—and I include within that class the directors— participated in the violation of this statute, they were liable, and when such participation was shown of the general manager, and he being personally responsible to the president, it seems to me that there is evidence to go to the jury as circumstantial evidence that that road was being con-

ducted in that way by and with his consent, advice, counsel, and direction. And any evidence given before the jury from which such participation might be inferred, then the question would be for the jury to determine whether the case had been made out of violation by them of the statutes. The proposition that these directors are liable also makes liable the subordinates, and every subordinate who participated in the violation of this law was liable to indictment in my judgment.

" Then that brings me to the relation of these directors, as individuals, with this corporation. The mere fact of their being directors is of no importance whatever. They cannot be held as directors, nor are they indicted as directors.

" The question is whether there is any evidence in this case as against any of these directors by which the jury would find personal participation or violation of this statute. I think that there is as to one of the directors. There is some slight evidence as against the vice-president, Mr. Reed, but it does not seem to me sufficient to justify giving it to the jury. As to the president of the road, we have the testimony of all the witnesses that he seems to have participated more closely in the management of the road than any one connected with its direction and management. We find·from the evidence of the general manager that he is responsible individually to the president, and to the vice-president in the absence of the president, and we find that the road was being conducted precisely the same under the supervision of the general manager, and he being personally responsible to the president, it seems to me that there is evidence to go to the jury as circumstantial evidence that the road was being conducted in that way by and with his consent, advice, counsel, and direction. As to the other defendants the evidence is entirely insufficient, and as to them I advise the jury to acquit under the improvement which the codifiers have made in our Code. I inform them that they are required to follow that advice, instead of pursuing the old form of directing an acquittal."

After his acquittal was directed, Mr. Clark was called and gave some formal testimony. Then counsel summed up. The jury returned a verdict of "Not guilty."

---

## Court of Oyer and Terminer—Monroe County.

*July,* 1891.

## PEOPLE *v.* BRICKNER.

MOTION TO SET ASIDE INDICTMENT, CODE CRIM. PROC. § 313.

A motion to set aside an indictment may be made when justice requires it, on grounds other than those enumerated in section 313 of the Code of Criminal Procedure.

An indictment will be set aside on motion when it has been found by the grand jury without evidence, or upon illegal evidence.

An indictment for conspiracy will be set aside therefore, unless the grand jury had before them proof not only of the overt acts of defendants, but also of an illegal combination amounting to a conspiracy under which the overt acts were committed.

Motion to set aside an indictment for conspiracy against Max Brickner and others.

The present indictment grew out of certain troubles between manufacturers of clothing at Rochester (who had, it was alleged, formed a combination called "The Clothiers' Exchange") and certain trade unions.

The facts, so far as they are necessary to an understanding of the present motion, are given in the opinion.

*Raines Bros.* and *D. Hays,* for defendants and motion.