NEW YORK OYER AND TERMINER.    April, 1855.    Before *E. P. Cowler*, Justice of the Supreme Court.

### THE PEOPLE *vs.* HYLER and others.

On a motion to admit to bail, on an indictment for murder, upon the testimony taken before the coroner and before the grand jury, the defendants will not be permitted to furnish further proof, either by affidavits or oral testimony, tending to establish their innocence.

The court in all cases, capital or otherwise, exercises its discretionary powers to admit to bail, when upon examination of the testimony under which the accused *is* held, the presumption of guilt is not strong; and the court is particularly called upon to bail in all cases, where the presumptions are decidedly in favor of the innocence of the accused.

A grand jury ought not to find an indictment, unless the testimony against the accused, *ex parte* and unexplained, is sufficient to convict.

The defendants had been indicted for the murder of William Poole. A motion was made to admit them to bail.

*Russell*, for defendant Van Pelt.

*Nye* and *H. F. Clark*, for the other defendants.

*A. Oakey Hall*, (District Attorney,) for the people.

*By the Court*, COWLES, J.—This is an application to admit to bail all of the defendants except Baker who is still at large The motion is based upon the testimony taken before the coroner, and that taken before the grand jury, on which the indictment was found. The defendants at the same time ask leave to furnish further proof, by affidavit or oral testimony, on the subject, showing their innocence of the offence charged, as affecting the question of bail. The district attorney at the same time also moves for an increase of the bail heretofore taken from the defendant Irving. The first question to be settled is, whether such proof can be received. After a careful examination of the subject, I have come to the conclusion that

The People *v.* Hyler.

such proof can not be received. It has not been the practice heretofore, either in this country or in England, nor can such a precedent be established without making an application for bail substantially a trial upon the merits; for if the prisoner can produce such evidence in his own behalf, the public prosecutor should be permitted to controvert it, which, in effect would transform a motion to bail into an examination into the guilt or innocence of the prisoners. The rule seems to be well settled to the contrary, and with reason, because, to open the whole question of guilt or innocence to proof on a motion to admit to bail, would be attended with most serious public inconvenience. In most cases there will be extant on the files of the court, the preliminary examination of the accused, or the testimony before the coroner, or that before the grand jury; in some cases all. True, as in this case, a party may sometimes, by casualty be deprived of the benefit of a preliminary examination, but the hardship in a particular instance should not induce the establishment of a precedent which would prove of great public inconvenience. The motion to put in proof must therefore be denied.

This brings us to the main question. The power of the court to bail is unquestioned. But the principles which will guide the court in the exercise of this power have been well established, and will be recognized here as the true rule by which to be governed. It has been said that in the higher class of offences, particularly of a capital nature, a court will not bail after indictment, although they may before. This distinction has arisen from the fact that in one case the court have before it the testimony taken before the coroner's jury, or before the committing magistrate, and can thus, by an inspection of the testimony, be enabled to form some judgment as to probable guilt or innocence; while in the other case, the old rule did not permit the testimony before the grand jury to be disclosed, and the court were, therefore, after indictment, unable to say on what proof it had been found. In *Lord Mohan's case*, (1 *Salk.* 104,) it was said, "If a man be found guilty of murder by a coroner's inquest, we sometimes bail him because the

coroner proceeds upon depositions taken in writing which we may look into; otherwise, if a man be found guilty of murder by a grand jury, because the court can not take notice of their evidence, which they by their oath are bound to conceal." " A man charged with murder by the verdict of a coroner's inquest may be admitted to bail, though not after the finding of an indictment by a grand jury." (1 *Chitty Crim. Law*, 129, *Am. ed. of* 1836.) And the reason is the same as above given. So in 1 *Martin Louis. Rep.* 142, *The Territory* v. *Benoit*, the court say: " On a coroner's inquest finding a person guilty of a capital crime, the judges have often looked into the testimony, which the coroner is bound to record, and when they have been of opinion that the jurors had drawn an illogical opinion, admitted the parties to bail. But as the evidence before the grand jury is not written, and can not be disclosed, the same discretion and control can not be exercised, and the judges can not help considering the finding of a grand jury too great a presumption of the defendant's guilt to bail him." Other instances to the same effect might be cited, all showing that the distinction made between bailing in capital cases before or after indictment has been founded on the reasons above given; that before the indictment the court have access to the depositions and testimony on which the charge is based, and in the other case could not, because the grand jury were required to keep the testimony before it secret; and the court having no means of inferring otherwise, would, therefore, always imply that the grand jury had not indicted on insufficient proof, and so refuse to bail. Such difficulty, however, does not exist in this case. It is provided by 2 *R. S.* 724, § 30, that " every grand jury may appoint one of their number to be a clerk thereof, to preserve minutes of their proceedings, and of the evidence given before them, &c., which was done here; and the whole evidence taken before the grand jury who found this bill, it is admitted is before the court, consisting of the record of the testimony taken before the coroner's jury, which was also read before the grand jury, together with a full record of all other facts testified to before the grand jury. The ques-

The People *v.* Hyler.

tion of bail is, therefore, open to consideration to the same
extent as it would be if applied for before indictment, for the
court know on what testimony this indictment was found. The
question then arises, under what circumstances can bail be
given in cases like the present? In the case of the *People* v.
*Goodwin*, (1 *Wheeler Crim. Cases*, 445,) the late Chief Justice
Spencer says: "That if it stands indifferent whether a person
charged with a felony be guilty or not, he ought to be bailed
and that even in capital cases, where there are any circum-
stances to induce the court to suppose he may be innocent,
they will bail." That most eminent jurist, in the same case,
after stating further that there is no fixed or certain rule for
every case, but that each one must be governed by the peculiar
circumstances attending it, says: "The object of imprisonment
before conviction is to secure the forthcoming of the person
charged with the commission of a crime, and it is never in-
tended as any part of the punishment, for until the guilt of the
party be legally ascertained there is no ground for punishment,
and it would be cruel and unjust to inflict it." The laws (says
he,) of every free country estimate personal liberty as of the
most sacred character, and it is not to be violated or abridged
before trial. "If (he further says,) the punishment be death or
corporeal imprisonment, a conciousness of guilt would probably
induce flight and an evasion of the punishment, and in admitting
to bail therefore, regard must be had to the probable guilt of the
party, and the nature of the punishment." He then proceeds
to recapitulate the facts in that particular case which was for
manslaughter, stated the prisoner had once been tried and the
jury disagreed; that the foreman had, when called, rendered
a verdict of guilty, but that on being polled, one of the jury
dissented, and then proceeds: "I am therefore bound to pre-
sume that the prisoner may be innocent of the offence. In such
a case as I understand the law, he is entitled to be bailed."
These principles were approved by the court in the case of
*Tayloe*, (5 *Cowen*, 39,) which was a case of homicide before in-
dictment, and in that case, after approving of the rule laid
down by Chief Justice Spencer in the case above cited, Chief

Justice Savage says: " If the facts in the case now before the court afford the same presumptions of innocence, and it appears to the court from the depositions that it is quite indifferent whether he is guilty, then in my opinion he ought to be bailed, otherwise not." The same rule has been repeatedly recognized in England. *Hawkins Pleas of the Crown, B.* 2, *ch.* 15, § 40 *to* 50; *Rex* v. *Dalton,* 2 *Str.* 911.) In *Com. Digest, Bail F,* it is said, " the court will not bail in murder, treason, &c., unless there be reasonable cause." The criminal code of Louisiana, contains a provision, which seems to be a summary of the common law rule on this subject. Article 192 provides that " All persons shall be bailable except for capital offences, where the proof is evident and the presumption great;" and then reciting that murder, rape, and some other offences, are punishable with death, proceeds: " Persons accused of the offences above enumerated, (capital offences) are also to be bailed when the proof is not evident nor the presumption strong." The general proposition deducible from the foregoing authorities is, that the court in all cases, capital or otherwise, exercises its discretionary powers to admit to bail, when from the testimony under which the accused is held, it is indifferent whether he be innocent or guilty; in other words, when upon examination of the testimony, the presumption of guilt is not strong, and they are particularly called upon to bail in all cases where the presumptions are decidedly in favor of the innocence of the accused.

It may be well here also to inquire on what testimony an indictment should be based. I am satisfied that this most important matter is oftentimes overlooked, and still oftener, per-·haps, misunderstood by our grand juries; and yet such is the very nature of the organization of a grand jury; such its mode of proceeding, the secrecy of its action, and the *ex parte* character of the testimony taken before it, that these errors are rarely, and then only incidentally, brought before the court for review. These errors the court should vigilantly watch, and, as far as practicable, correct. In no case is injustice more likely to be done, than in the finding of indictments on insuffi-

cient proof; an injustice difficult to be guarded against, and yet oftentimes most oppressive in its consequences to the accused. I can not regard the indictment as in theory a mere accusation based upon probable cause to believe the accused may be guilty, like the finding of the committing magistrate, but as a direct and positive charge on oath that upon the testimony before the grand jury, *ex parte* and unexplained, the jury find he is guilty.

In 1 *Chitty Crim. Law*, 318, it is said: " Formerly it was laid down that a grand jury ought to find the bill; if probable evidence were adduced to support it, because it is only an accusation, and the defendant will afterwards defend himself before a more public tribunal. But great authorities have taken a more merciful view of the subject, and considering the ignominy, the dangers of perjury, the anxiety of delay, and the misery of a prison, have argued that the grand inquest ought, as far as the evidence before them goes, to be convinced of the guilt of the defendant. What was therefore anciently said of petit treason may be applied to all other offences, that since it is preferred in the absence of the prisoner, it ought to be supported by substantial testimonies." " Indictments," says Lord Coke, " being the foundation of all capital proceedings, found in the absence of the party accused, and only the evidence for the king being adduced, it is necessary that the proof of the offence should be substantial." (3 *Coke Inst.* 25.) In a note to 4 *Hawkins Pleas of the Crown, p.* 82, we find the following: " It has been observed with great strength of argument that a grand jury ought to have the same persuasion of the truth as a petit jury or a coroner's inquest." ( *Vide 'also* 4 *State Trials,* 183.) Blackstone uses the following language: " A grand jury ought to be thoroughly persuaded of the truth of an indictment so far as their evidence goes, and not to rest satisfied merely with remote possibilities; a doctrine that might be applied to very oppressive purposes." (4 *Bl. Com.* 303.) The rule, as thus laid down, I believe to be the true one. No other, in my judgment, is safe, nor is it to be tolerated that a citizen shall be charged with a serious offence, and sent to a petit jury for

trial, unless the *ex parte* testimony taken in his absence, with no power of cross-examination, shall at least, if unexplained, show him guilty. This is implied in the very language of the indictment: " The jurors, &c. upon their oaths present that A B is guilty," &c. How upon their oaths can they say the accused is guilty, unless as the testimony stands before them, the proof unexplained would lead logically to such conclusion? Is it to be tolerated that grand juries are to speculate upon the chances of the guilt or innocence of the citizen? If the grand jury can not say that the testimony they have taken *ex parte* is strong enough to lead to conclusion of guilt, is the citizen to be subjected to all the ignominy of an indictment, and the rigors perhaps of a long confinement in a prison, to the injury of his health and character, and the ruin of his business, on a suspicion merely that he may be guilty? I do not so understand the law, but as above stated, that the testimony must be sufficient in degree to convict, if unexplained. Such are the principles which must govern in the cases now before the court.

The parties who apply for bail, seven in number, viz: McLaughlin alias Pargene, Turner, Hyler, Lynn, Van Pelt, Morrissey and Irving, are all charged by the indictment as accessories to the murder of William Poole. The testimony shows that upon the evening of the homicide, without anticipation of a meeting by either party, Morrissey and the deceased met in a public house in this city; that they were enemies; that on meeting a violent quarrel ensued between them, and much feeling was excited; that Poole, supposing probably he would be assaulted, drew a pistol and pointed it at Morrissey; that Morrissey was soon furnished with one, which he snapped at Poole; that at this time Irving interfered, and attempted to prevent any difficulty, and that after much excitement, but no blows given, the parties were separated by the arrest of both Poole and Morrissey, both of whom were taken away and in opposite directions. None of the accused were present at this first quarrel but Morrissey, Irving and Hyler. As the parties were taken from the house, Irving also left, and was not seen in company with the accused again that

night, and the weight of the testimony is that he went directly home and did not hear of the subsequent affray until the next morning. The only other testimony as to Irving is that some months before this he had been heard to make threats in regard to Poole, and to declare his intention to procure his death. As to Morrissey the whole testimony goes to show that after the difficulty, he in company with some of the accused and others, called at different drinking places; that he became very much intoxicated, and was taken home before the second affray in a state of senseless inebriation. There is no evidence that he conspired with any other parties to have a further collision with Poole that night, or expected one, and the inference from the testimony is conclusive that he knew nothing of the subsequent difficulty which resulted in Poole's being shot, until after the occurrence and was then in too inebriated a state to be made to know it until the next morning. As to Hyler, Lynn, and Van Pelt, the theory of the prosecution is that they in conjunction with Baker, Pargene, and Turner, formed a conspiracy for the purpose of a joint attack the same night upon Poole, and together went to the scene of the first difficulty with that end in view. That these parties last named did go to the scene of the homicide and probably in company, is true. That a difficulty soon ensued between a portion of the party and Poole, is equally true, and Poole received a shot which resulted in his death some days after. To connect Hyler, Lynn, or Van Pelt with this shooting, so as to make either one liable as an accessory, it is necessary for the prosecution to first establish a guilty confederacy among them having that end in view; for, so far as the proof shows, no overt act on the part of either of these three parties was committed after they entered Stanwix Hall, which indicated any participation in the attack on Poole. Van Pelt on that occasion, as the evidence shows, interfered with Pargene, one of the accused, to prevent his assault on Poole, and was knocked down for his attempt and immediately left the house. Neither Lynn nor Hyler joined in the attack that was made, nor in any way showed a hostile purpose by

The People *v.* Hyler.

any overt act. The strongest view that can be taken of the case unfavorably to the defendants, Hyler, Lynn, and Van Pelt, is that there are strong suspicions that they may have known Poole was at Stanwix Hall, and went there with others to attack him or at least to witness the attack. There are some circumstances which favor such a theory, but as far as the circumstances in proof now go, they are not sufficient of themselves without other proof to warrant a finding that it was so The case as to them therefore falls within the rule laid down in the *People* v. *Goodwin*, (1 *Wheeler Crim. Cas. above cited.*) As was said by Chief Justice Spencer in that case, so am I compelled to say in this, "I am bound to presume they may be innocent of the offence." I am equally bound to say that the proof as it now stands, would not justify the conviction of Hyler, Lynn or Van Pelt. They must therefore be admitted to bail.

As regards Irving and Morrissey, I must go still further and say that upon the testimony, I am entirely clear, there is not only none on which a conviction can be had, but that the proof did not warrant the finding of the indictment. Whatever may have been the errors or the follies of either Irving or Morrissey, it will not answer to allow of a precedent so dangerous to the liberty of the citizen as that of upholding an indictment based on testimony so utterly insufficient, and while the grand jury in the discharge of its most responsible and important duties, will always have the firm and steady support of this court, the court must with equal firmness and fidelity guard the personal rights of the citizen against the consequences of so dangerous a precedent as that of sustaining or favoring an indictment the finding of which is so utterly unwarranted by the proof.

It only remains to fix upon the amount of the bail to be given by the several parties. That of Irving having been already fixed by Mr. Justice Morris, will remain undisturbed.

Morrissey must be admitted to bail in the sum of ten thousand dollars.

Hyler, Lynn and Van Pelt must be admitted in the sum of twenty thousand dollars each.

Proper notice in each of the cases must be given to the district attorney of the persons proposed as bail, that he may inquire into their sufficiency.

As to the other two parties (Turner and Pargene) who have applied for bail, it is only necessary to say that the application in their behalf must be denied.

At a subsequent day, on the suggestion of the prisoner's counsel, assented to by the district attorney, that the bail fixed was beyond the ability of some of the parties to furnish, the court modified the order, fixing the bail of Van Pelt at $4000, of Lynn and Hyler at $10,000 each, which was given as thus fixed, by all the parties.

