(27 Misc. Rep. 60.)

## PEOPLE v. MOLINEUX.

(Court of General Sessions, New York County. March, 1899.)

CRIMINAL LAW—INSPECTION OF MINUTES OF GRAND JURY.
 Where one is indicted before he has had a preliminary examination, and at the coroner's inquest, at which he was a witness, he was not allowed to furnish testimony which might have explained that which was adverse to him, and his counsel makes affidavit that the evidence was insufficient in law to sustain the indictment, accused will be permitted to inspect the minutes of the testimony before the grand jury in advance of pleading to the indictment.

Roland B. Molineux was indicted for murder, and he applies for an inspection of the minutes of testimony before the grand jury, and for a copy thereof. Granted.

Asa Bird Gardiner, Dist. Atty., for the People.

Weeks, Battle & Marshall (Bartow S. Weeks and George Gordon Battle, of counsel), for defendant.

BLANCHARD, J. The defendant is charged, by indictment filed March 1, 1899, with the crime of murder in the first degree, in having, on December 28, 1898, feloniously caused the death of one Katharine J. Adams by administering to her a deadly poison, and this is a motion for an order allowing the defendant and his counsel to inspect the minutes of the grand jury upon which the indictment was found, and requiring the district attorney to furnish a copy of the minutes to the defendant. A brief statement of the facts preceding the finding of the indictment, as shown by the moving papers, is as follows: Katharine J. Adams died in the city of New York on the 28th day of December, 1898, under circumstances which required investigation by a coroner's jury. At the inquest the defendant, having been subpœnaed by the coroner as a witness, appeared and testified. His counsel was present, but was not permitted to examine him, or to examine or cross-examine other witnesses, or to take any active part as such counsel in the proceedings. The coroner's jury found a verdict to the effect that the death of the said Katharine J. Adams was caused by poison administered to her by one Harry S. Cornish, to whom it had been sent through the mail by the defendant. Thereupon the coroner held the defendant for examination, and committed him to the city prison. The examination was set down for March 1, 1899. On that day, on motion of the district attorney, the examination was adjourned to March 3, 1899. In the meantime, on the presentment of the district attorney, the grand jury had entered upon an investigation of the circumstances surrounding the death of said Katharine J. Adams, and, as a result, on March 1, 1899, found said indictment against the defendant. On motion of the district attorney, the examination before the coroner was discontinued, the defendant, by his counsel, protesting against and objecting to such discontinuance, and demanding that the examination proceed. The defendant was called upon to plead to the indictment in this court, and thereupon makes this motion in advance of pleading.

It is within the power of the court to entertain a motion to inspect the minutes of the grand jury, and it is addressed to its discretion. People v. Naughton, 38 How. Prac. 430; Eighmy v. People, 79 N. Y. 546, 560; People v. Bellows, 1 How. Prac. (N. S.) 149. And the fact that the defendant was indicted without having had a preliminary examination before a magistrate furnishes a strong inducement to the court to look upon the application with favor. People v. Naughton; People v. Bellows, supra.

In the very recent case of People v. Willis (county court, Kings county) Aspinwall, J., on the defendant's motion for inspection of the minutes of the grand jury, inquired: "Was there any exami-

nation before a magistrate?" and, receiving a negative answer, the judge said: "It is the practice of this court to grant a motion of this kind where there has been no preliminary examination." See motion papers in People v. Kane (supreme court, Second depart- ment), filed February 22, 1899. In opinion of Jenks, J., in People v. Kane, supra, it is stated:

"For the most part, criminal proceedings are begun by the issue of a war- rant, whereupon there follows an examination before a magistrate. Then the defendant may face the witnesses, may cross-examine them, and may give evidence on his own part, all before he can be held for the action of the grand jury. Where a prosecution is begun in the grand jury room, these privileges are withheld from the defendant, and he must proceed or stand trial, apprised only by the accusation of the indictment and by the names of the witnesses indorsed upon it. A defendant who seeks inspection of the grand jury minutes on the sole plea that he has been deprived of a prelim- inary examination should have the ear of the court."

In People v. Carlyle W. Harris, the defendant was indicted for committing a murder by the administration of poison. He had no preliminary examination before a magistrate, and the circumstan- ces in that case were in all essential features similar to those exist- ing in this case. The counsel for Harris moved for an inspection of the minutes of the grand jury. Cowing, J., in an opinion, dated June 30, 1891, filed in this court, held:

"In my judgment, the defendant, under the circumstances disclosed on this motion, is fairly entitled to inspect the evidence given by the people's wit- nesses before the grand jury, and I fail to see how the people will suffer any prejudice by allowing such inspection."

It is contended by the district attorney that this is a motion for an unusual and extraordinary privilege, and that the defendant should not be permitted to inspect the minutes of the grand jury without first showing the court extraordinary cause or necessity therefor. I cannot sustain such contention. There are many prec- edents for an application like this, and the rule is that the de- fendant must show cause which shall be sufficient in the judgment of the court. I find no authority for the proposition that he must show extraordinary cause. Among the reasons pointed out by the defendant why this application should be granted, it appears that at the inquest the district attorney insisted that the testimony given by the defendant and other witnesses indicated that the de- fendant had committed the alleged murder, but it does not appear but that the defendant, had he been permitted to do so, might have furnished testimony in his own behalf which would have tended to explain or nullify the testimony adverse to him. And the defend- ant's counsel, in his moving affidavit, makes allegations which, in effect, charge that the indictment in question was found upon evi- dence that is insufficient in law to sustain it, and insists that the defendant should not be put to the expense, notoriety, and ig- nominy of a public trial without first being allowed an opportunity to ascertain whether the testimony before the grand jury was suffi- cient to establish a prima facie case against him, in the eyes of the law, upon which he can be legally put to his defense. This contention of the defendant is sustained by abundant authority.

If the indictment was found without sufficient legal evidence to sustain it, it is not an indictment in contemplation of law, and cannot stand. Code Cr. Proc. §§ 256, 258; People v. Clark (O. & T.) 14 N. Y. Supp. 642; People v. Brickner (O. & T.) 15 N. Y. Supp. 528; People v. Traction Co. (Gen. Sess.) 50 N. Y. Supp. 1117.

People v. Clark, supra, appears to clearly establish the proposition that this court has, independent of statute, an inherent power over the proceedings upon which the indictment is based, and that it should exercise such inherent and independent power when a proper case is presented, and in furtherance of justice. The grand jury is a part of the court, and it cannot be maintained for a moment that all its proceedings upon which an indictment is found are not open to inspection by the court. To hold otherwise might result in particular cases in changing what it meant to be a fair and impartial investigation by a part of the court for the protection of society into a star-chamber inquisition. The presumption of innocence always attends the accused, and that wise and ancient rule of law should be as much respected and enforced in the preliminary investigations of an alleged crime as at any other stage of criminal proceedings. Indeed, this presumption should then and there be most strenuously insisted upon. Every step in a proceeding which may result in depriving a human being of life or liberty should be taken with the most jealous care for the rights of the accused, and the zeal of a prosecuting officer can never be a justification for the punishment of the innocent. Too many safeguards cannot be devised to protect the innocent in that most valuable of all earthly possessions, a good name and an unblemished reputation, and we cannot ignore the fact, if we would, that serious injury in greater or less degrees is sustained by every person accused of committing a crime, even though his complete innocence may thereafter be fully established. A humane interpretation of the law, therefore, is that the grand jury is forbidden to find an indictment without sufficient legal evidence.

We find nothing in the record before us upon this application to indicate that the learned district attorney has not fully performed his duty as a public prosecutor in a faithful and efficient manner; but it has not been shown that the inspection by the defendant of the minutes of the proceedings of the grand jury, upon which the indictment against him was found, will in any way be detrimental to the people's case, or to the due administration of justice, or against public policy; and after a careful consideration of the arguments of counsel, and of the facts as presented by the motion papers, I am of the opinion that, in the interest of a proper administration of justice and in fairness to the defendant, his motion for an inspection of the minutes of the grand jury should be granted. Motion granted.