PEOPLE v. STEINHARDT et al.

(Supreme Court, Trial Term, New York County. May 5, 1905.)

1. CRIMINAL LAW—INSPECTION OF GRAND JURY MINUTES.

Laws 1885, p. 600, c. 348, authorizes the appointment of a stenographer to take in shorthand testimony introduced before the grand jury, and provides that the district attorney shall not permit any person to take a copy of the testimony, nor to read the same, except upon the written order of the court, duly made after hearing the district attorney. By Pen. Code, § 157a, it is a misdemeanor for the stenographer to disclose the evidence given to the grand jury except on written order of the court. As at common law, it is by Pen. Code, § 157, a criminal offense for a grand juror to disclose the evidence adduced before the grand jury. *Held*, that an accused is not entitled to an inspection of the minutes of the grand jury which found the indictment, except to enable him to move to set aside the indictment on one or more of the grounds permissible by law, and he is not entitled to such an inspection in order to enable him to prepare for trial.

2. SAME—SETTING ASIDE INDICTMENT—GROUNDS—STATUTE—INHERENT POWER OF COURT.

Cr. Code, § 313, provides that an indictment must be set aside where it is not found indorsed and presented as prescribed by law, and where a person has been permitted to be present during the session of the grand jury while the charge embraced in the indictment was under consideration, and that it shall be set aside on no other ground. *Held*, that the court has inherent power to set aside an indictment where it was found without evidence or wholly upon illegal and incompetent testimony, and where the indictment is based in part on the testimony of a defendant compelled to be a witness in violation of his constitutional rights.

3. SAME—INDICTMENT—FAILURE TO INDORSE NAME OF WITNESS—REMEDY.

Where a motion by an accused to inspect the minutes of the grand jury was on the ground that the names of certain persons present before the grand jury did not appear on the indictment as witnesses, and it was urged that they were present, contrary to Cr. Code, § 313, subd. 2, there being nothing to indicate that they were present in any other capacity than as witnesses, except the omission of their names, the motion was without merit, the remedy being an application under section 271 to the court for direction that the names of the witnesses be furnished to the accused.

4. SAME—WITNESSES—INCRIMINATING EVIDENCE—CONSTITUTIONAL RIGHT.

Laws 1885, p. 600, c. 348, authorizes the appointment of a stenographer to take in shorthand the testimony introduced before the grand jury, and provides that the district attorney shall not permit any person to take a copy of the testimony, nor to read the same, except upon the written order of the court, duly made after hearing the district attorney. By Pen. Code, § 157a, it is a misdemeanor for the stenographer to disclose the evidence given to the grand jury, except on written order of the court.

As at common law, it is by Pen. Code, § 157, a criminal offense for a grand juror to disclose the evidence adduced before the grand jury. *Held*, that the fact that an accused is ignorant as to the testimony on which the grand jury acted, and that he believes that the evidence is insufficient in law, is no reason for granting him an inspection of the minutes of the grand jury.

5. SAME—TESTIMONY BEFORE PREVIOUS GRAND JURY.

Where, on a motion by an accused for an inspection of the minutes of the grand jury, it appeared from his affidavit that some of the matters referred to in the indictment were under investigation by a previous grand jury before which he testified, and that he believed the stenographer read to the jury in question the testimony given by the defendant to the previous grand jury, and the affidavit of the assistant district attorney conceded that the stenographer testified before the grand jury which found the indictment to some of the statements made by defendant to the previous grand jury, defendant was entitled to inspect the testimony given by the stenographer.

6. SAME—TESTIMONY OF DEFENDANT—RIGHT TO INSPECT.

Where, on a motion by an accused for an inspection of the minutes of the grand jury, it appeared that he was subpoenaed and testified before the grand jury, he was entitled to inspect the minutes of the grand jury in so far as concerned his own testimony.

Prosecution against Benjamin Steinhardt and another. Motion by defendants for an inspection of the grand jury minutes. Motion allowed in part.

William T. Jerome, Dist. Atty., for the People.
John R. Dos Passos, for defendant Hummel.
DeLancy Nicoll, for defendant Steinhardt.

KENEFICK, J. The defendants are indicted on two charges of subornation of perjury. The charges were brought before the grand jury in the first instance, without a preliminary hearing before a magistrate. The defendants now move to inspect the minutes of testimony, given before the grand jury, upon which the indictments are based. Inspection is sought, as stated in the moving affidavits, preliminarily to a motion to dismiss the indictments, and also, as suggested in the argument of counsel, to enable the defendants to prepare for trial.

Motions of this character have become so common in practice in recent years that it may not be amiss to examine at some length and to define as near as may be the power of the court to grant this form of relief. The practice of preserving a written record of the proceedings before a grand jury, including minutes of the testimony, did not prevail at common law. The courts uniformly refused bail after indictment for murder, for the reason that the lack of a written record of the testimony upon which the indictment was founded, and the secrecy imposed upon the jurors by their oaths, made it impossible for the court to look into the evidence upon which the grand jury acted. Lord Mohun's Case, 1 Salk. 103; Ex parte Tayloe, 5 Cow. 56.

In the revision of the statutes of this state in 1827–28, we find the first statutory provision for the keeping of a written record. It was there enacted that:

"Every grand jury may appoint one of their number to be a clerk thereof to preserve minutes of their proceedings and of the evidence given before them, which minutes shall be delivered to the district-attorney of the county when so directed by the grand jury." 2 Rev. St. (1st Ed.) p. 724, part 4, c. 2, tit. 4, § 30.

The revisers' note states the purpose of this provision as follows:

"A clerk has been found in practice very useful; his minutes frequently prevent mistakes, and enable the district-attorney to draw an indictment according to the facts. It is left discretionary with the jury in the above section, but it is believed it ought to be required." 3 Rev. St. (2d Ed.) notes, p. 844, part 4, c. 2, tit. 4.

It is apparent from the revisers' note that this provision for a written record was designed principally as an aid and convenience to the district attorney. However, the courts very soon assumed the right to look into the minutes, to determine whether bail should be allowed after indictment for murder. People v. Van Horne, 8 Barb. 158; People v. Baker, 10 How. Prac. 567; People v. Hyler, 2 Parker, Cr. R. 570. The courts likewise assumed to have such control of the minutes as to permit an inspection thereof by the defendant. People v. Naughton, 38 How. Prac. 430; Eighmy v. People, 79 N. Y. 560; People v. Bellows, 1 How. Prac. (N. S.) 149. In none of these cases, however, did the court exercise the power, and I can find no reported case where such an inspection was granted, prior to the statute authorizing a stenographic record of the testimony given before grand juries, which will be hereafter referred to.

The provision of the Revised Statutes above quoted remained in force until the adoption of the Criminal Code in 1881, when it was incorporated, substantially, in section 250 of that Code.

In 1885 the Legislature enacted a statute (Laws 1885, p. 600, c. 348), which in substance is still in force, designed to obtain and preserve in more complete form the record of the testimony before grand juries. This statute authorizes the appointment, in each of certain counties of the state, including the county of New York, of a stenographer to "take the testimony introduced before such grand juries, and to furnish to the district-attorney of such county a full copy of all such testimony as such district-attorney shall require, but he shall not permit any other person to take a copy of the same, nor of any portion thereof, except upon the written order of the court made after hearing the said district-attorney. All of the said original minutes shall be kept in the custody of said district-attorney, and neither the same nor a copy of the same, or of any portion of the same, shall be taken from the office of said district-attorney, except as above provided." Section 5. Here we have the first statutory recognition of the control of the court over the written record of the proceedings before a grand jury. Before this statute the courts had, and since its enactment have, uniformly declared that inspection is not accorded as a matter of right, but as a matter of judicial discretion. Except for the privilege of inspection of the written record as a matter of judicial discretion, every rule of secrecy surrounding the testimony given to the grand jury which

prevailed at common law is preserved in our statutes.  The jurors' oath, substituting the people of the state for the King, is precisely in the same language.   Chitty's Crim. Law, vol. 4, p. 183;  Cr. Code, §§ 245, 246.

As at common law, so now by statute, it is a criminal offense for a grand juror to disclose the evidence adduced before the grand jury, except when lawfully required by a court or officer.   4 Black. Comm. 126;  Pen. Code, § 157.   The cases in which a grand juror may be required to disclose the testimony of a witness are substantially the same.   Chitty's Crim. Law, vol. 1, p. 317;  3 Rev. St. (2d Ed.) notes, p. 844, part 4, c. 2, tit. 4;  Cr. Code, § 266.

The introduction of a stenographer into the work of the grand jury was followed by the enactment of a statute making it a misdemeanor for him to disclose the evidence given to the grand jury, except on written order of the court.   Pen. Code, § 157a (added 1893).   The passage of this section is indisputable evidence of the legislative intent to preserve inviolate the secrecy of their proceedings.   The reasons for the principle of secrecy are well stated in Com. v. Mead, 12 Gray, 167, 71 Am. Dec. 741, as follows:

"The reasons on which the sanction of secrecy, which the common law gives to proceedings before grand juries, is founded, are said in the books to be threefold:   One is that the utmost freedom of disclosure of alleged crimes and offenses by prosecutors may be secured.   A second is that perjury and subornation of perjury may be prevented by withholding the knowledge of facts testified to before the grand jury, which, if known, it would be for the interest of the accused or their confederates to attempt to disprove by procuring false testimony.   The third is to conceal the fact that an indictment is found against a party, in order to avoid the danger that he may escape and elude arrest upon it before the presentment is made."

Each of these reasons concerns itself with the due administration of justice and the proper enforcement of the criminal law, and is as potent to-day as when first formulated.

Upon what grounds, then, shall the court, having in view the long-established principle of secrecy, and the reasons upon which it is grounded, disclose this testimony to a defendant?   It is suggested that the power should be exercised to enable a defendant to prepare for trial.   The fundamental rule governing discovery in civil actions is that it must be confined to facts which are material to the applicant's cause of action or defense, and that it does not enable him to pry into his adversary's case, or find out the evidence by which that case will be supported.   Pomeroy's Equity Jur. vol. 1, § 201.   The Code provisions relating to discovery are merely a substitute for the ancient bill of discovery in chancery.   Glenney v. Stedwell, 64 N. Y. 120.   Thus the practice in civil causes affords no analogy to support the claim that the prosecution should be required to disclose to the defense the evidence upon which it expects to prove the charge made in the indictment.

A defendant is entitled to know the precise nature of the accusation he is called upon to meet, and the court undoubtedly has the power to require a bill of particulars to amplify the indictment if it does not set forth the charge with sufficient certainty; but no such relief is sought here, and the indictments are so specific in

detailing the acts constituting the crime that there could be little ground for granting such relief, if demanded. If the testimony is to be disclosed to enable the defendant to prepare for trial, then the right of inspection follows as a matter of course, and the principle of secrecy preserved in our statutes is swept away by judicial fiat. The only substantial ground upon which a motion of this character can be entertained is to enable the defendant to move to set aside the indictment upon one or more of the grounds permissible by law. This was the conclusion reached by Recorder Smyth in People v. Jaehne, 4 N. Y. Cr. R. 161, and People v. Richmond, 5 N. Y. Cr. R. 97.

We are thus brought to consider the grounds upon which a defendant may move to quash an indictment. The statutory provisions upon this subject are embraced in sections 668 and 313 of the Criminal Code. The former section authorizes a dismissal of the indictment for failure to prosecute, and can have no relevancy to the subject in hand. Section 313 provides that:

"The indictment must be set aside by the court in which the defendant is arraigned, and upon his motion, in either of the following cases, but in no other:

"(1) When it is not found, endorsed and presented as prescribed in sections two hundred sixty-eight and two hundred seventy-two.

"(2) When a person has been permitted to be present during the session of the grand jury while the charge embraced in the indictment was under consideration, except as provided in sections two hundred sixty-two, two hundred sixty-three and two hundred sixty-four."

Notwithstanding the mandatory provision of this section that a motion to dismiss can be made only upon the grounds therein specified, the Court of Appeals in the recent case of People v. Glen, 173 N. Y. 395, 66 N. E. 112, holds that the court has the inherent power "to set aside indictments whenever it appears that they have been found without evidence, or upon illegal and incompetent testimony." Before this decision the courts had exercised such power where there was no evidence before the grand jury to sustain the charge (People v. Restenblatt, 1 Abb. Prac. 268; People v. Price, 6 N. Y. Cr. R. 141, 2 N. Y. Supp. 414), where a witness who gave testimony was not sworn (U. S. v. Coolidge, 2 Gall. 364, Fed. Cas. No. 14,858), where incompetent witnesses gave testimony (People v. Briggs, 60 How. Prac. 17; People v. Moore, 65 How. Prac. 177), where the defendant was compelled to be a witness against himself in violation of his constitutional right (People v. Singer, 5 N. Y. Cr. R. 1; People v. Haines, 6 N. Y. Cr. R. 100, 1 N. Y. Supp. 55), and, quite recently, where some illegal evidence was received (People v. Molineux, 27 Misc. Rep. 79, 58 N. Y. Supp. 155). I am in entire accord with such of these cases as hold that an indictment should be set aside when the grand jury has compelled a defendant to testify before it in violation of his constitutional rights, or when there is no competent testimony before it to sustain the charge. I cannot reconcile myself to the soundness of the cases which decide that the court is authorized to review the sufficiency of the evidence upon which the indictment is based. This is in effect substituting

the judgment of the court for that of the grand jury, and thus destroying the character of that body as an independent judicial institution. Nor do I approve of the principle, laid down in some of the above cases, that, assuming there is sufficient competent evidence to sustain the charge, the court has the power to determine whether some illegal evidence which has been received has not improperly influenced the finding of an indictment. The latter ruling applies the principle adopted by the appellate courts in reviewing a judgment of conviction, and entirely loses sight of the fact that the grand jury is an investigating and accusing body, against whose finding the presumption of innocence still prevails. If these rigid rules are to be applied to the proceedings before a grand jury, its usefulness as an investigating tribunal is greatly impaired.

I take it, then, that the inherent power of the court to set aside indictments is limited to cases where the indictment is found without evidence, or wholly upon illegal and incompetent testimony, and to cases where the indictment is based in part upon the testimony of the defendant, compelled to be a witness in violation of his constitutional right. This gives full force and effect to the rule laid down in the Glen Case, and to the statement of Bartlett, J., in People v. Borgstrom, 178 N. Y., at page 258, 70 N. E. 781, that "The court can ＊ ＊ ＊ set aside an indictment where the constitutional rights of the defendant are invaded."

Having thus indicated the statutory power and the inherent power of the court to quash indictments, we may proceed to examine the moving papers on this motion, to ascertain whether they indicate that an inspection of the minutes will reveal any legal basis for a motion to dismiss these indictments. What facts are set forth upon which judicial discretion can act? Judicial discretion "does not mean a wild self-willfulness which may prompt any and every act; but this judicial discretion is guided by the law—see what the law discloses upon a certain statement of facts, and then decide in accordance with the law—so as to do substantially equity and justice. Lord Coke, cited in Faber v. Bruner, 13 Mo. 543." It is claimed by the defendant Steinhardt in his moving affidavit that three persons were "in attendance at the grand jury" which reported these indictments whose names do not appear indorsed as witnesses on the indictments, and it is urged that they were improperly present within the meaning of subdivision 2 of section 313 of the Criminal Code above set forth. The affidavit of the prosecuting attorney states that one of these persons was examined as a witness, that another was not before the grand jury, and that the third is a defendant indicted jointly with these defendants on another charge growing out of some of the matters set forth in this indictment. It is not alleged in the moving affidavits that any of these persons was present when the jurors were expressing their opinions or voting upon the question of finding a bill, or even when other witnesses were testifying, and there is nothing to indicate that they were present in any other capacity than as witnesses, except the mere omis-

sion of their names from the list of witnesses indorsed on the indict-
ments. The remedy for failure to indorse the names of witnesses
is not a motion to inspect the minutes, but "if not so endorsed, the
Court must, upon the application of the defendant at any time be-
fore the trial, direct the names of such witnesses as they appear up-
on the minutes of the grand jury to be furnished him forthwith."
Cr. Code, § 271. This disposes of the only claim made in this case
of the existence of an error which would authorize a motion to dis-
miss the indictments on statutory grounds.

The next inquiry is whether the moving papers rendered it prob-
able that a disclosure of the testimony will show that the indict-
ments were found without evidence, or that the constitutional right
of the defendant not to be compelled to be a witness against himself
was violated. The indictments charge in substance that the de-
fendants procured one Charles F. Dodge to testify falsely concern-
ing certain material matters in a proceeding instituted in this court
by said Dodge to vacate a judgment of divorce theretofore rendered
against him in favor of one Clemence Dodge, and to make certain
false statements in an affidavit which was used in said proceeding.
Indorsed upon each indictment are the names of the following per-
sons as witnesses, viz.: David May, A. H. Kaffenburgh, Nathaniel
Cohen, A. N. Jacobson, J. J. Canavan, Abraham H. Hummel,.
Charles F. Dodge, Thomas C. Thompson, M. S. Lott, Ernest T.
Hall, G. A. Vail, and James E. Keese. It appears that the witnesses
May, Kaffenburgh, and Cohen are connected with the law firm of
the defendants, and that the witness Jacobson was formerly in the
employ of the firm; and the affidavits of these persons are included
in the moving papers, and set forth in substance their testimony be-
fore the grand jury, from which it would appear they gave no testi-
mony connecting the defendants with the crime charged. The de-
fendant Hummel in his affidavit avers that, aside from his own tes-
timony, and the testimony of the four witnesses last above referred
to as set forth in their said affidavits, he has no knowledge as to the
testimony and proceedings before the grand jury. The defendant
Steinhardt in his affidavit avers that he has been informed by each
of the witnesses May, Kaffenburgh, Cohen, Jacobson, Canavan,
and Hummel that they gave no testimony before the grand jury
to support a charge of subornation of perjury against him or any
one else; that the witness Keese is the stenographer of the grand
jury; that the witness Hall is the referee before whom testimony
was taken in the application to set aside the judgment of divorce;
that he does not know the witnesses Thompson, Lott, and Vail;
that he is "informed and verily believes that no witness examined
before the grand jury, other than the said Dodge, gave any evidence
at all corroborative of the charge that he had procured or induced
him [Dodge] to sign the said affidavit, or give the said testimony,
knowing of any alleged falsity or perjury therein; and I assert that
his evidence to that effect, if given, was entirely uncorroborated
and insufficient in law." The position of the defendant Hummel on
this branch of the case reduces itself to this: I have communicated

with some of the witnesses, who inform me that they gave no testimony substantiating this charge against me, and I gave none myself. Certain other witnesses were sworn, of whose testimony I am ignorant. I would like to know what their testimony is, "to take such action * * * as will properly serve and protect my interests." The attitude of Steinhardt on this phase of the case may be summarized thus: Some of the witnesses swear they gave no testimony connecting me with these charges. As to the other witnesses, I do not know them, but I am informed and believe (by whom he is informed and upon what he grounds his belief is not shown) that no witness other than Dodge gave any evidence to sustain the charges against me, and therefore there was no sufficient evidence to support these indictments; and I desire to see what testimony they gave, to determine whether a prima facie case was established. So we are confronted with the proposition whether the ignorance of the defendant as to the testimony upon which the grand jury acted, and his belief, or, to put it more exactly, his surmise, that it is insufficient in law, furnish a basis for the exercise of the judicial discretion to permit an inspection of the minutes. This position seems to me utterly indefensible, yet it is not surprising that it should be seriously maintained here, for such seems to be the rule laid down in the Molineux Case, 27 Misc. Rep. 60, 57 N. Y. Supp. 936. If that proposition holds true, then the disclosure of the testimony becomes substantially a matter of right, because there is no case in which the defendant could not furnish the same basis for the court's action. It has been suggested that the initiation of the charge before the grand jury without a preliminary hearing before a magistrate is an important, if not controlling, circumstance in granting motions of this character. People v. Molineux, 27 Misc. Rep. 60, 57 N. Y. Supp. 936; People v. Foody, 38 Misc. Rep. 357, 77 N. Y. Supp. 943; People v. Proskey, 32 Misc. Rep. 367, 66 N. Y. Supp. 736. I cannot conceive why it should be. There is no presumption that the indictment was based on the same evidence as that which was submitted to the magistrate. The evidence may be less satisfying or more satisfying. There is no law compelling the grand jury to hear all the evidence presented to the magistrate, and none to prevent the grand jury from hearing more evidence. Indeed, under our Criminal Code, the evidence to warrant an indictment is required to be stronger in degree than that which will authorize a holding to answer by a committing magistrate. See sections 208 and 258, Cr. Code. As the sole ground for motions of this character is to enable the defendant to move to set aside the indictment for the reasons hereinbefore stated, it is difficult to understand how the holding of a preliminary hearing, or its omission, can have any legitimate bearing in determining the right of inspection.

The remaining inquiry is whether the moving papers indicate that either defendant was compelled to be a witness against himself in violation of his constitutional right. The defendant Steinhardt in his affidavit states that some of the matters referred to in these in-

dictments were under investigation by a previous grand jury; that he appeared (not that he was subpœnaed) before it and gave testimony concerning the same; that he believes that the witness Keese, who is stenographer to the grand jury, read to the grand jury which presented these indictments the testimony which said defendant gave to the previous grand jury, and he charges that the "said use of the said testimony is unwarranted, and is not allowed by law." The affidavit of Assistant District Attorney Rand concedes that Steinhardt did appear before and give testimony to the prior grand jury, and that Keese testified, before the grand jury which found the indictments, to some of the statements so made by the said defendant to the prior grand jury. Rand further avers that "these statements, however, were voluntarily made after the witness Steinhardt had been informed that any statements he made to the grand jury might be used against him, and that he was not under any compulsion to answer any question which might tend to incriminate him, and after the witness Steinhardt had stated that he understood that to be so." There is nothing in either affidavit to indicate whether his attendance before the grand jury, as distinguished from his testimony to them, was voluntary or by compulsion of a subpœna, but I am inclined to indulge in the presumption—for the purposes of this motion—that his attendance was upon subpœna in the usual way. It has been held that the constitutional right of a defendant not to be compelled to be a witness against himself is violated when he is required to appear before a grand jury, even though he is informed of his right to refuse to testify before giving his testimony. People v. Singer, 18 Abb. N. C. 96. Without indicating my views as to whether such use of Steinhardt's testimony was an invasion of his constitutional right, I am of the opinion that he is entitled to know with certainty just what Keese testified to, that he may move to quash the indictment because of the use of such testimony, if so advised. It appears from the affidavit of Hummel that he was subpœnaed to appear, and in response to such subpœna did appear, before the grand jury which found these indictments, and was interrogated and did give some testimony concerning the matters alleged in the indictments, and his name appears as a witness indorsed on the indictments; and his affidavit charges:

"I was not advised by Mr. Rand, or by the foreman or any member of the grand jury, that I was in fact charged with or suspected of a crime or any wrongdoing, nor was I told that I might decline to testify, or that I had a right to so decline, or that any testimony I might give could be used against me."

The affidavit of Mr. Rand, replying to these allegations, states:

"Abraham H. Hummel, the defendant named in the indictment, was subpœnaed to appear before the grand jury on the 5th day of January, 1905. Before being sworn, the said Hummel asked to be informed of the nature of the proceeding, of the purpose of the investigation, and the names of the parties against whom it was directed. In reply to this request, the said Hummel was informed that the object of the proceeding was to ascertain what persons, if any, were privy to the commission of the crime of perjury committed by Charles F. Dodge, and what. persons, if any, had conspired to deceive the Supreme Court of this county and subvert the administration

of the law. Being asked if he was then fully informed as to the object of the investigation, the said Hummel answered, 'Yes.'

"The witness, having been sworn, was then asked what services he had rendered for any person in the action of Clemence Dodge against Charles F. Dodge, and thereupon refused to answer the question, upon the ground that the answer might tend to incriminate him. The witness was also asked whether or not he had received any money from any person whatsoever for services rendered in the divorce action of Clemence Dodge against Charles F. Dodge. In answer to this question the witness stated that he did receive money. Being asked from whom, he declined to answer, upon the ground that it might incriminate him."

In another affidavit used on this motion, Rand says:

"That the name of Abraham H. Hummel is indorsed upon the back of the indictment, for the reason that the indictment is a joint one against both Hummel and Benjamin Steinhardt; that the district attorney expressly cautioned and advised the grand jury that the evidence given by Abraham H. Hummel could not be used as the basis of any indictment against him."

I am not called upon to determine whether the use of Hummel as a witness was, under the circumstances, such a violation of his constitutional right as vitiates the indictments against him. It is clear, however, that he is entitled to know just what the grand jury minutes show regarding his testimony, and the proceedings before the grand jury respecting it, in order that he may make subsequently, if so advised, a motion to set aside the indictment, on the ground that he was compelled to be a witness against himself. Within the limits indicated, therefore, inspection is allowed in this case, but otherwise the motion is denied.

It may be said that the rules governing the right of inspection of grand jury minutes here laid down, in their practical application, confine that privilege within narrow bounds. An all-sufficient answer to that suggestion is that the privilege itself is extraordinary, and should only be accorded in exceptional cases. While the courts should jealously safeguard the personal liberty of the individual, they should not go so far in that direction as to render inefficient the administration of the criminal law.

An order may be entered permitting the defendant Steinhardt to inspect the testimony given by the witness Keese, and permitting the defendant Hummel to inspect his own testimony and the proceedings of the grand jury respecting such testimony, and denying this motion in all other respects.