In the Matter of the Application of the ATTORNEY-GENERAL OF THE UNITED STATES, for Permission to Obtain and Examine Minutes Taken before the Grand Jury for Kings County in an Inquiry Conducted by the District Attorney of Kings County into the Affairs of the NATIONAL TITLE GUARANTY COMPANY.

County Court, Kings County, September 24, 1936.

*Leo J. Hickey, United States Attorney, for Eastern District of New York* [*Daniel Gutman, Assistant District Attorney*], for the motion.

*William F. X. Geoghan, District Attorney* [*Harry J. Walsh, Assistant District Attorney*], appearing but not opposing.

FITZGERALD, J. This is an application by the Attorney-General of the United States for an inspection of the minutes of the grand jury (October, 1934), which investigated certain matters in relation to the affairs of the National Title Guaranty Company. No indictments were found, but a lengthy presentment was made in which the operations of the company are reviewed in considerable detail.

The company and eight individuals have been indicted by the Federal grand jury for the Eastern District of New York on so-called mail fraud charges arising from the sale of mortgages and guaranteed first mortgage certificates. The defendants are now awaiting trial.

It is stated in the moving papers that the individuals indicted by the Federal grand jury waived immunity and testified before the State grand jury in its investigation, and that certain other persons testified therein who may be called as witnesses in the trial of the Federal indictment; that the Attorney-General believes it to be important to the proper prosecution of the Federal indictment that he be informed of the testimony given by such persons in the local investigation.

The district attorney of the county does not oppose the application. He merely calls attention tó the heretofore existing rule, and points to various decisions which seem to have determined conditions under which it has been held to be proper to permit an inspection of grand jury minutes.

The question involved is novel, but tremendously important; and the decision to be made, if followed, and the views expressed, if acquiesced in by other courts, may have far-reaching effects.

The proceedings before grand juries from time immemorial have been secret. The primary reason for such secrecy, however, must not be overlooked.

In *Commonwealth* v. *Mead* (12 Gray, 167) the purpose of such secrecy was stated to be three fold. " One is that the utmost freedom of disclosure of alleged crimes and offenses by prosecutors may be secured. A second is that perjury and subornation of perjury may be prevented by withholding the knowledge of facts testified to before the grand jury, which, if known, it would be for the interest of the accused or their confederates to attempt to disprove by procuring false testimony. The third is to conceal the fact that an indictment is found against a party, in order to avoid the danger that he may escape and elude arrest upon it, before the presentment is made."

Another vital reason, however, is to prevent disclosures that individuals have been investigated, without sufficient evidence to justify indictment. Frequently unjust, ill-founded and malicious accusations are made that should never have been presented. Publication of such information would blast or as irreparably damage reputations as if the accusations were just.

At common law no written record of the proceedings of grand juries was kept. (*People ex rel. Hirschberg* v. *Supreme Court,* 269 N. Y. 392, at p. 394.)

It was in the 1827–1828 revision of the Revised Statutes that authority was first given to keep a written record. (2 R. S. [1st ed.] 724, § 30.) The authority there was permissive. In 1881 the provision was incorporated in the Code of Criminal Procedure in mandatory form in substantially the language in which it now appears (Code Crim. Proc. § 250). (*People* v. *Steinhardt*, 47 Misc. 252.)

In 1885 (Laws of 1885, chap. 348) provision was first made for the appointment of stenographers to take the testimony before grand juries.

While attempts were made prior to that time to obtain an inspection of grand jury minutes, no reported case has been found in which such an application was successful. (*People* v. *Steinhardt*, *supra*.)

The primary purpose of preserving a record of a grand jury's proceedings is an aid to the courts and the district attorney. With the authorization of stenographic reports of the proceedings, however, applications for inspection rapidly multiplied, and as a result by judicial determinations two definite rules have been established to control the disposition of such motions.

It has been repeatedly held that an inspection should be granted only to enable the accused to move in the exercise of his constitutional right for a dismissal of an indictment based upon illegal or insufficient evidence. (*People* v. *Glen*, 173 N. Y. 395; *People* v. *Sexton*, 187 id. 495; *People ex rel. Hirschberg* v. *Supreme Court*, 269 id. 392 at p. 395.)

Heretofore it has been the rule that an inspection would not be granted to enable a defendant to prepare for trial. (*Matter of Baldwin*, 65 Misc. 153; *People* v. *Steinhardt*, *supra*.)

In *People* v. *Kresel* (142 Misc. 88), however, an inspection was granted for such a purpose. The circumstances were unusual, and the application was granted for the reason defendant would be unable to have a fair trial unless the grand jury minutes were open to his inspection.

The numerous cases in which the right of the *defendants* to inspect was involved have no bearing upon the instant application.

This motion is made by the Attorney-General of the United States. He urges that the proper administration of justice requires knowledge on his part of what transpired before the grand jury.

Courts cannot ignore the current events of daily life. They cannot act like ostriches and by hiding their heads pretend ignorance of what is common knowledge in the community.

It is a notorious fact that many institutions which were engaged in the sale of first mortgages and guaranteed mortgages failed

miserably to meet the expectations of those who had reposed confidence in the integrity of the management of such concerns; they learned too late and to their dismay that such confidence had been misplaced, and that the savings of a lifetime had vanished as the result of careless, incompetent and reckless, if not criminal, conduct.

Accusations have been made that in many instances disaster has followed acts plainly contravening the criminal law. Yet no one has been brought to justice, and the ancient cry has been heard, and the old belief has been engendered, that the poor are powerless against the depredations of entrenched wealth.

It would be a sad commentary upon the administration of justice if a court of criminal jurisdiction should thwart, or attempt to hinder, a co-ordinate department of government in the administration of justice. There should be co-operation between the Federal and State governments to the utmost limit possible. Neither State lines nor alien agencies should be utilized to deprive those charged under Federal or State laws with the duty of enforcing penal laws of every opportunity and facility to discharge their obligations to the fullest extent possible.

To meet the conditions and emergencies of the present day, high-powered automobile movements must not be limited to the pace of ox-cart days.

Ample authority exists for the proposition that the courts are not limited to applications by defendants to exercise the inherent power to permit inspections of grand jury minutes. If there were no precedent, this would be a fitting time to make one. Our government, within constitutional limits, is flexible to a degree sufficient to meet new conditions as they arise.

Such was the situation when an order was made granting an application for an inspection by a commissioner appointed by the Governor to conduct an investigation against the district attorney of New York county. (*Matter of Crain*, 139 Misc. 799.)

Moreover, only recently Judge Nova in this court granted an application of the police commissioner of New York city for an inspection of the grand jury minutes in the so-called *Druckman* case. From an indorsement on the papers by Judge Nova it appears that after argument the district attorney joined in the application. (Vide order Oct. 28, 1935, *People* v. *Luckman*.)

The district attorney expresses the fear that continued encroachment on the rule may result in its complete abrogation. Such fear is groundless. The courts may be relied upon to safeguard the proceedings of grand juries as thoroughly in the future as in the past.

The Attorney-General states that Judge COLLINS of the Court of General Sessions recently made the minutes of a New York county grand jury, in its investigation of the State Title and Mortgage Company, available to the Federal authorities; that Judge KNOX, a United States District Judge for the Southern District of New York, permitted the district attorney of New York county to inspect the minutes of a Federal grand jury.

In my opinion, the action of Judges NOVA, COLLINS and KNOX, all experienced and learned in criminal law, was in accord with sound public policy.

Reasons which might well preclude an examination of such minutes by private individuals may well be abortive when raised against an inspection by public officials to enable them more efficiently to discharge the obligations of their office.

No private interest is here sought to be served. The information is not desired to aid a private litigant. The grounds herein set forth for keeping inviolate the proceedings mentioned do not exist. The purpose of the inspection is to facilitate and make efficient the administration of justice by the Federal government.

In the proper exercise of a sound discretion the power inherent in the court to grant the application should be exercised.

The district attorney having stated in open court that he is not aware of any part of the minutes which should be withheld for any public reason, the application is granted.